JOSIAH LEE JOHNSTON and HENRY E. JOHNSTON, trading as JOHNSTON BROTHERS & CO. *vs.* THE PHŒNIX INSURANCE COMPANY.

*Assignment of policy of Insurance—Assignee takes subject to equities.*

The assignee of a policy of insurance takes it subject to all the equities which attach to it in the hands of the insured; and on a suit by the assignee the insurer has a right to claim any set-off, or make any defence he could have made against the insured at the time of notice of assignment.

If the insurer assent to the assignment or by his act or conduct induces the assignee to take the same, under the belief that no claim exists against the insured, then no such defence or set-off could be relied on in a suit by the assignee.

G. insured a cargo of shooks with the P. Ins. Co.—The shooks arrived in a damaged condition and it was agreed to sell them at auction and adjust the loss. G. then wrote a note to the agent of the Ins. Co. transferring to J. B. & Co. the settlement of the insurance as soon as arrangements were made with the auctioneer to sell them. On this the agent endorsed "the nett proceeds of sales of the within named shooks would come in the usual course to Mr. G., but in accordance with his request I will arrange with B. & Co. (the auctioneers,) to hold the amount for your (J. B. & Co's) account." The loss on the shooks was determined by an adjuster to be $905.16. Afterwards the P. Ins. Co. sued J. B. & Co. as guarantors on a note of G., growing out of an independent transaction, and the defendants proposed to set-off against the plaintiff's claim the $905.16 which was alleged to be due to the defendants under the above assignment. HELD :

1st. That the endorsement of the plaintiff's agent did not recognize the right of the defendants to $905.16, but to the proceeds arising from the sale.

2nd. That the plaintiff's right to set-off against G's claim for $905.16 a sum due it, was superior to any claim which the defendants had on the $905.16 in virtue of the above assignment.

APPEAL from the Superior Court of Baltimore City.

This action was brought by the appellee against the appellants as guarantors of a note of Carlos G. de Garmendia for $1004, in favor of the appellee for insurance premiums. The facts of the case are stated in the opinion of the Court.

*Exception.*—The plaintiff offered three prayers and the defendants two, all of which the Court (DOBBIN, J.,) rejected, and gave the following instruction:

If the jury shall find the paper of guarantee by the defendants offered in evidence, dated February 12, 1868, and shall further find the note of Garmendia, dated July 1, 1868, for $1004, to have been issued for the premium upon a risk, the proceeds of which in case of loss was to be paid to the defendants, and shall find that the said note is unpaid, then the plaintiff is entitled to recover the amount of the said note with interest from the date of its maturity. But if the jury shall further find, that Garmendia executed and delivered to the defendants the paper dated on the 12th October, 1868, and that the plaintiff had notice of the same, then the defendants are entitled to set-off against the claim of the plaintiff, upon the guarantee, such sum as may have been payable to Garmendia for the loss in said paper referred to, after deducting therefrom the amount of premium owing to the plaintiff by Garmendia for insurance made prior to the date of said notice.

To the rejection of their prayers and to the instruction given by the Court, the defendants excepted.

The jury rendered a verdict for the plaintiff for $1169.66, and judgment was entered accordingly. The defendants appealed.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and ROBINSON, J.

*Charles Marshall*, for the appellants.

I.   As Mr. Coale, the agent of the appellee, was notified both verbally by Garmendia, and by his letter of October 12th, 1868, that the appellants were about making to Garmendia a loan of $2000 on account of the insurance on the shooks, and were to do so under the expectation that they would receive the proceeds of such insurance, and as the conduct and acceptance of said agent naturally led the appellants to make the transaction, the appellee cannot now be permitted to claim that such insurance was extinguished, at the time the declarations and acceptance were made, by premiums due to the appellee, and the appellants should have been allowed to set off their claim on the appellee.

II.   The appellee should not have been permitted to deduct from the money to which the appellants would be entitled, under their assignment of the insurance and loss on the shooks, premiums due by Garmendia prior to the notice of the assignment; not only for the reasons stated in the first point, but also because the policy, No. 176, operated as a separate insurance of each risk, as entered in the book, and the provision made by the terms of the contract in regard to the deduction of the premium note, in case of loss, is limited to the note given for the particular insurance on which the loss occurs.   *Schœfer vs. Baltimore Marine Ins. Co.*, 33 *Md.*, 117.

The usage proved to deduct other premium could not vary the terms of the written contract and was inadmissible.   *Marshall vs. Haney*, 4 *Md.*, 498; *Oelricks vs. Ford*, 23 *How.*, 63.

III.   Garmendia and Coale, the agent, placed different constructions upon the arrangement for credit, Garmendia claiming it, as his right, and Coale insisting that it was merely gratuitous on his part.   There is no pretence however that Coale ever *communicated* to Garmendia that the giving of credit was no essential part of their deal-

ings, and, under such circumstances, it was the right of Garmendia to insist that when a practice had grown up as to the mode of payment, and been long continued, insurances made afterwards were governed by it, and that he was entitled to the four months credit. If this point be well taken, the premiums which the appellee claimed to deduct were not due at the time the loss was assigned to the appellants..

*James A. L. McClure,* for the appellee.

The true construction of the letter of Garmendia to Coale, of October 12th, 1868, is, that it did not operate as an absolute assignment to Johnston Bros. & Co., of the right, title and interest of Garmendia to the insurance upon the headings or shooks, but that it operated merely as a transfer of the *settlement of the insurance* to them.

They were only the agents of Garmendia for such settlement, and had to account to him after it had been made, as he had received only two thousand dollars from them *on account* of the said headings, insured for about $2400.

Being such agents for the settlement of the insurance; or, at all events, the transfer being merely for the settlement of the insurance, Coale had a right to deduct from the amount agreed upon in such settlement, the sum that, at the time of the settlement, Garmendia was indebted to his company.

But if the letter is to be construed as an absolute assignment of the insurance upon the headings to Johnston Bros. & Co., then Garmendia could not, *without the consent of the Insurance Company,* impose upon it any responsibility to Johnston Bros. & Co., whereby the rights of the Insurance Company would be impaired, or its liability enhanced or modified in any respect, any further, than to put it under obligation, *after notice,* to be accountable to

the assignee for the amount for which it is liable under the policy. "In other words, the underwriter is not to be put in a worse condition without his own consent." "Whatever set-off he was entitled to at the time of notice of the assignment, and whatever other defence he could make against the original assured, he may still make, notwithstanding the assignment." 1 *Phillips on Ins.*, sec. 19, *paragraph* 82 ; *Rousset vs. Ins. Co. of N. A.*, 1 *Binney*, 429 ; *Gourdon, et al. vs. Ins. Co. of N. A.*, 1 *Binney*, 430.

The principle of these cases is, that a policy of insurance is not negotiable, but is to be considered as other *choses in action*, which are not assignable in their nature, nor by the common law, but only in equity, and that consequently, the assignee takes the assignment, subject to all the equities existing between the original insured and insurer at the time the assignment is made. *Timms and wife vs. Shannon, &c*, 19 *Md.*, 297, 314; *Art. 9, sec. 3, of the Code.*

But the correct conception of the rights of the parties to this suit is had in the fact of controlling the paper of the 12th of October, 1868, by the endorsement thereon.

Coale, in his endorsement says, "*the nett proceeds of sales of the within named shooks*, would come in the usual course to Mr. Garmendia ; but in accordance with his request, I will arrange with Messrs. Bennett & Co., *to hold the amount for your account.*"

The paper and the endorsement are to be construed together, and they form a contract which is to determine the rights of the parties. Coale does not absolutely accept the paper. He does not promise to settle the insurance with Johnston Bros. & Co. He merely says that he will arrange with Bennett & Co. to hold the *nett proceeds of sales of shooks for them.* Surely Johnston Bros. & Co. cannot say they were deceived by such endorsement. Any one can understand it, and must see

that Coale studiously avoided any other undertaking than to pay the nett proceeds of sales of shooks to them.

ROBINSON, J., delivered the opinion of the Court.

C. G. de Garmendia effected insurances with the appellee at various times, on sundry cargoes, and at different premiums, from February 11th, 1868, to July 21st, 1868, inclusive, under Policy No. 183, entered in what is known as a policy book,—loss, if any, payable to Johnston Brothers & Co., the appellants.

On the 12th of February, 1868, the appellants agreed with the appellee to guarantee the payment at maturity of all notes given by Garmendia, for premiums on marine risks, under policies issued by the appellee, wherein the loss was made payable to them.

On the 1st of July, 1868, Garmendia passed to the appellee, his promissory note for one thousand and four dollars, being the balance due by him for unpaid premiums on policies, in which the loss if any, was payable to the appellants. Prior to the maturity of this note, Garmendia failed, and suit was brought by the appellee to recover of the appellants as guarantors, the amount due on said note. In this suit, the appellants claim a set-off against said note under the following state of facts: On the 26th of September, 1868, Garmendia effected an insurance with the appellee on a cargo of *shooks*, under *Policy No.* 176, the loss, if any, payable to Garmendia himself. The shooks were valued at $2376.06, and the premium charged on account of same was $17.86.

The shooks arrived in Baltimore in a damaged condition, and Garmendia and the appellee agreed they should be sold at auction to ascertain whether there was a loss, and if so, whether there was a claim against the company under the policy. The shooks were sold at auction on the 15th of October, and the nett proceeds of sale amounting to $1471.46, were paid by the appellee to

the appellants in pursuance of the following letter and endorsement:

"OFFICE OF JOHNSTON BROTHERS & CO.

*Bankers and Brokers,*

BALTIMORE, *October* 12, 1868.

"JAMES CAREY COALE, Present.

"*Dear Sir:*—I have received from Messrs. Johnston Brothers & Co. two thousand ds. on account of the 6000 pair of headings insured by you for $2400, and I hereby transfer to said gentlemen, the settlement of the insurance, which you told me would be done as soon as you made arrangements with Mr. Bennett to sell them at auction on Thursday next.

Respectfully,

C. G. DE GARMENDIA."

Endorsed:—

"*Gents:*—The nett proceeds of sales of the within named shooks wd. come in the usual course to Mr. Garmendia, but in accordance with his request I will arrange with Messrs. Bennett & Co. to hold the amount for your account.

Respy. yours,

JAMES CAREY COALE, *Agt.*

Messrs. JOHNSTON BROS. & CO."

In December, 1868, Garmendia exhibited to Coale the agent, a statement by an insurance adjuster and proofs of loss, showing a partial loss of $905.16, on the said cargo of shooks. In the meantime Garmendia failed, owing the appellee a note of $1341.87, dated July 1st, 1868, payable four months after date, and the further sum of $891.85, the whole amount of said indebtedness being on

account of unpaid premiums under Policy No. 176, and for the payment of which the appellants were not liable under their guarantee, the loss on account of said policies being payable to Garmendia.

The appellants contend, that in the suit against them on the note of Garmendia for one thousand and four dollars, their liability on account of which is admitted, they have a right to set off the adjusted loss of $905.16, under Policy 176, and which they claim was assigned to them by Garmendia by his letter of October 12th, 1868, and to which the appellee by their endorsement assented.

The appellee on the other hand insists that the letter of October 12th, together with its indorsement, operated as an assignment to the appellants of the net proceeds only, and further, conceding it to be an assignment of the entire interest of Garmendia of the insurance on the cargo of shooks, the appellee claims the right to deduct from the said adjusted loss of $905.16, the amount due by Garmendia, on account of unpaid premiums under Policy No. 176.

We take the law to be well settled, that by an assignment of a policy of insurance, the assignee takes it subject to all the equities which attach to it in the hands of the insured, and that in a suit by the assignee, the *insurer* has the right to claim any set-off or make any defence he could have made against the insured at the time of notice of the assignment. *Phillips on Insurance, vol.* 1, *sec.* 82, and cases cited. In a suit then by Garmendia himself to recover this adjusted loss, there could be no doubt as to the right of the appellee to set-off against such claim not only the premium *owing* on the Policy No 176, but also all premiums owing by him on other policies issued by the appellee. If so, the same right exists as against the appellants unless it has been *expressly* or *impliedly waived* by the appellee. What will amount to such waiver, must of course depend upon the circumstances sorrounding each particular case.

Johnston *vs.* The Phœnix Ins. Co.

We may safely say however, that if the insurer assents to the assignment; or by its *act* or *conduct induces* the assignee to take the same under the belief that no claim exists against the insured, then no such defence or set-off could be relied on in a suit by the assignee.

The case then resolves itself into this, is there any thing in the letter of October 12th, taken in connection with the endorsement thereon by Coale, the agent, and the circumstances surrounding the same, from which it can be inferred that the appellee assented to the assignment of Garmendia's entire interest in the policy to the appellants, or induced them to take it under the belief that there was no claim or set-off against it? Now if it be conceded that the language of the letter of October 12th, is sufficiently broad to operate as an assignment of Garmendia's entire interest, yet unless the appellee assented in some way to the same, or by its acts or conduct mislead the assignee, it is clear, the mere assignment could not in any manner interfere with any defence which the appellee could have made, if the suit had been brought by Garmendia himself. Was there then any such assent on the part of the appellee, or was the conduct of the latter such as was calculated under the circumstances, to mislead or deceive the appellants? To these inquiries, the indorsement of Coale, the agent, is we think a sufficient answer. By it he says in express terms: "The nett proceeds of sales of the within named shooks would come in the usual course to Mr. Garmendia, but in accordance with his request I will arrange with Messrs. Bennett & Co. to hold the amount for your account." Not one word is here said about assenting to the assignment of Garmendia's entire interest in the policy, or that the appellee would consent to be liable under the letter of October 12th, for one dollar beyond the sale of the shooks, then in the hands of the auctioneers. On the contrary, its liability is expressly limited to the proceeds arising from said sale.

If this endorsement was not satisfactory, if the appellants desired the assent of the appellee to the assignment of Garmendia's entire interest, including not only the proceeds from the sale of the shooks, but the loss also, if any, to be thereafter ascertained, under the policy, it was in their power to have refused the qualified endorsement of the appellee, and to have insisted that it should be made to cover the *entire loss* under the policy. We know of no rule of construction by which the agreement on the part of Coale, the agent of the appellee, to pay to the appellants the nett proceeds arising from the sale of the shooks by Bennett, the auctioneer, can be construed as an assent on the part of the appellee to the assignment of Garmendia's entire interest in the policy, including not only the proceeds arising from the sale of the shooks, but also the adjusted loss, if any, under the insurance. From what we have said, it follows, that the appellants being assignees of Garmendia, they were entitled to set-off against the note sued on by the appellee, such sum only as may have been payable under the policy to Garmendia, on account of the adjusted loss, after deducting therefrom the amount of premiums owing to the appellee by Garmendia, for insurances made prior to the date of said assignment, and notice thereof to the appellee.

Finding no error therefore, in the instruction granted by the Court, nor in the rejection of the prayers offered by the appellants, the judgment will be affirmed.

*Judgment affirmed.*