WILLIAM GRAHAM BOWDOIN, and ALEXANDER BROWN, Surviving partners of the firm of ALEXANDER BROWN & SONS, *vs.* ORMOND HAMMOND, JR., and wife.

*Mortgagor and Mortgagee—Foreclosure Sale—Destruction of Mortgaged premises by Fire after the Sale and Before its Final ratification—Fire insurance—Right to Insurance money—Usury.*

H. borrowed of B. & Sons $50,000, to secure the payment of which he mortgaged certain premises in Baltimore city. The mortgagor covenanted to insure, and to keep insured, the mortgaged premises, and in pursuance thereof he insured the property to the amount of $56,000. Each of the twenty-one policies was indorsed as follows: " Loss, if any, payable to B. & Sons, as interest may appear." Contemporaneously with the execution of the mortgage, and as part of the same transaction, an agreement was entered into between H., and B. & Sons, by which upon the payment by H. of a bankers' commission of one per cent. quarterly, and interest upon the loan of $50,000, B. & Sons agreed to extend the time for the payment of the mortgage until 1885. The mortgagor being in default, the mortgaged premises were sold on the 26th of March, 1891, to the mortgagees, for $25,000, and the sale was reported to the Court and ratified *nisi* on the 28th of March. On the day the order of ratification *nisi* was passed, the following indorsement was, at the request of B. & Sons, written upon nineteen of the policies: " This policy continued in name and for account of B. & Sons, who have purchased the within described property under foreclosure sale, subject to ratification by Court." On the day following the passage of the order of ratification *nisi*, the mortgaged premises were almost totally destroyed by fire. Adjusters being appointed, the loss was ascertained to be $17,310.06, and this amount was, with the assent of the mortgagor, paid to B. & Sons. Before this payment was made the sale was, on the 2nd of July 1891, without objection, finally ratified. Upon exceptions to the auditor's accounts, distributing the proceeds of sale, the Court below decreed that the amount due on the mortgage debt, eliminating therefrom four per cent. bankers' commissions allowed by the auditor, the same being usurious, was $23,435.67, and crediting this amount with $22,988.59, that being the net proceeds of the mortgage sale, there remained a balance due the

Bowdoin and Brown *vs.* Hammond.

mortgagees of $447.08; and that the net surplus of the insurance after the payment of this balance, namely the sum of $15,158.69, should be paid by the mortgagees to the mortgagor. On appeal by the mortgagees it was HELD:

1st. That the effect of this decree was, to give the mortgagor the $25,000 for which the property was sold, and in addition thereto $15,158.69 of the insurance, thus making $40,000 realized by him from the mortgaged premises, the entire value of which as ascertained by the sale, was $25,000; and the mortgagees, for whose benefit and protection the property was insured, and to whom the loss was made payable, and to whom the mortgagor was shown to be indebted in the sum of $23,435.67, got the mortgaged premises, which sold for $25,000, diminished in value to the extent of $17,310,06.

2nd. That such an inequitable result could not be supported by any principle recognized by a Court of equity.

3rd. That by the terms of the policies themselves the loss was made payable to the mortgagees for whose indemnity the property was insured; and if the fire had occurred before the sale they would have been entitled, as it was conceded, to the insurance to the extent, at least, of the mortgage debt.

4th. That the fact that the loss occurred after the sale and before its ratification, in no way affected their right to the insurance payable under the policies.

5th. That where property is sold under a decree of Court, and a loss occurs before the sale is ratified, the loss falls upon the owner and not upon the purchaser, for the reason that the contract of sale is not a complete sale until it has received the sanction of the Court.

6th. That the fire having occurred before the ratification of the sale the loss fell upon the mortgagor, but the insurance was payable to the mortgagees.

7th. That as purchasers, B. & Sons had the right to apply to the Court for an abatement of the purchase money to the extent of the loss occasioned by the fire; but this they did not do, as they were fully indemnified against such loss by the insurance fund created for that purpose, and which had been collected and paid to them, with the consent of the mortgagor; and the ratification of the sale could not be considered as interfering in any manner with the right of the mortgagees to the full amount of the insurance money paid to them.

8th. That the agreement to pay one per cent. quarterly for the extension of the time for the payment of the loan, in addition

to the legal rate of interest thereon, was usurious notwithstanding the increased interest was called a " bankers' commission."

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree of the lower Court (DENNIS, J.) requiring William Graham Bowdoin and Alexander Brown, surviving partners of the firm of Alexander Brown & Sons, to pay to Ormond Hammond, Jr., the sum of $15,158.69, with interest thereon from the time it was received by them. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., FOWLER, McSHERRY, BOYD and BRISCOE, J.

*Frederick W. Brune,* and *Stewart Brown,* for the appellants.

*Robert D. Morrison,* (with whom was *Frederick C. Cook,* on the brief,) for the appellees.

ROBINSON, C. J., delivered the opinion of the Court.

There is no dispute whatever in regard to the facts of this case. Hammond, the appellee, borrowed of Alexander Brown & Sons fifty thousand dollars, to secure the payment of which he mortgaged certain premises in Baltimore city, then used as a cold storage warehouse. The mortgagor covenanted to insure and to keep insured the mortgaged premises, and in pursuance thereof, he insured the property to the amount of $56,000, apportioned as follows: $33,000 on the buildings, and $23,000 on the machinery.

Each of the twenty-one policies was endorsed as follows: *"Loss, if any, payable to Alexander Brown & Sons, as interest may appear,"* and this endorsement was made at the time the policies were issued.

Contemporaneously with the execution of the mortgage and as part of the same transaction, an agreement was

entered into between Hammond and Alexander Brown & Sons by which, upon the payment by Hammond of a bankers' commission of one per cent. quarterly, and interest upon the loan of $50,000, Brown & Sons agreed to extend the time for the payment of the mortgage until 1885.

: The mortgagor being in default, the mortgaged premises were sold at public auction on the 26th March, 1891, to the mortgagees for $25,000, and the sale was duly reported to the Circuit Court of Baltimore City, and on the 28th March the sale was ratified *nisi.* On the same day the order of ratification *nisi* was passed, the following endorsement was, at the instance and request of Alexander Brown & Sons, the purchasers, written upon nineteen of the twenty-one policies, the Merchants of Newark and the Hanover of New York being the only policies upon which the endorsement was not made: "This policy continued in name and for account of Alexander Brown & Sons, who have purchased the within described property under foreclosure sale, subject to ratification by Court." On the 29th March, the day after the passage of the order of ratification *nisi,* the mortgaged premises were almost totally destroyed by fire.

Two of the insurance companies, The Merchants of Newark and the Hanover of New York, each repudiated their liability on account of the loss, claiming that their policies were avoided by reason of the sale under the mortgage proceedings without their assent, and suits were brought by Alexander Brown & Sons, the mortgagees, to whom the loss was made payable by the mortgage, against these two companies. The underwriters on the other nineteen policies, whilst they did not deny their liability, insisted that the policies of the two companies which had repudiated their liability should still be considered and treated as existing at the time of the fire, so as to reduce their respective contributions for the loss. There was also some dispute as to the extent of the loss. Adjusters however being ap-

pointed, the loss was ascertained to be $17,310.06, and this amount was, with the assent of the mortgagor, paid to the Messrs. Brown & Sons.

In the meantime, and before the insurance was paid to the mortgagees, the sale was on the 2d July, 1891, without objection, finally ratified. Thereupon the proceedings were referred to the auditor, and on the 22d July he filed two accounts, A and B. In the first the auditor charged Brown & Sons, the purchasers, with the full amount of the purchase money, $25,000, and after deducting the expenses and commissions on the sale, the net proceeds amounted to $23,061.77. In account B he makes the balance due on the mortgage debt $36,516, and crediting this amount with the proceeds of sale, there still remains $13,454.23 due the mortgagees. To this account exceptions were filed by Hammond, mortgagor, on the ground that the auditor had allowed the mortgagees a bankers' commission of four per cent., or one per cent. per quarter in addition to the legal rate of six per cent., and with the exceptions he filed an account showing that the actual amount due, less the usurious allowance for bankers' commissions, was $23,335.67, instead of $36,516 as found by the auditor. When these exceptions were filed the suits against the two companies which had repudiated their liability were still pending, and the appeals taken to the rulings of the Court below in these cases were not decided until February, 1893. After these appeals had been decided the mortgagor filed additional exceptions to the ratification of account B on the ground that he was entitled to have the mortgage debt credited with the $17,310.06 of insurance money which had been paid to the mortgagees. These exceptions, it will be observed, were not filed until eighteen months after the account had been stated, and more than sixteen months after the insurance had been paid. Upon these exceptions the Court below decreed that the amount due on the mortgage debt, eliminating therefrom the four per cent. bankers' com-

missions, the same being usurious, was $23,435.67, and crediting the mortgage debt with the proceeds of sale, $22,988.59, there remained a balance due the mortgagees of $447.08. And the Court further decreed that the surplus of the insurance, after the payment of this balance, namely, the sum of $15,158.69, should be paid by the mortgagees to the mortgagor. So the effect of the decree is to give to the mortgagor the entire purchase money, $25,000, and in addition thereto $15,158.69 of the insurance, thus making $40,000 realized by him from the mortgaged premises, the entire value of which was, as we have seen, but $25,000. And the mortgagees for the benefit and protection of whom the property was insured, and to whom the loss was made payable, and to whom the mortgagor, it is admitted, was indebted in the sum of $23,435.67, get the mortgaged premises, which sold for $25,000, diminished in value by the fire to the extent of $17,310.06.

It would be strange, indeed, if such an inequitable result as this could be supported by any principle recognized by a Court of equity. We say strange, because the property was insured for the purpose of indemnifying the mortgagees against loss, and by the terms of the policies themselves the loss was made payable to them. If the fire had occurred before the sale they would, it is conceded, have been entitled to the insurance to the extent, at least, of the mortgage debt. The fact that the loss occurred after the sale and before its ratification, in no manner affected their rights to the insurance payable under the policies. Where property is sold under a decree of the Court, and a loss occurs before the sale is ratified, the loss falls upon the owner and not upon the purchaser, for the reason that the contract of sale is not a complete sale until it has received the sanction of the Court. As we said in *Hanover Fire Insurance Company vs. Brown,* 77 *Md.,* 64, the Court in such a case is the vendor acting through its agent, the trustee who has been appointed to make

the sale. He reports to the Court the offer of the bidder for the property, and if the offer is accepted, the sale is ratified, and thereupon, and not before, the contract of sale becomes complete. Before the ratification the transaction is merely an offer to purchase, which has not been accepted. The fire in this case having occurred before the ratification of the sale, the loss falls upon Hammond, the mortgagor; but, although the loss falls upon him, the insurance was payable to the mortgagees.

The argument, however, is that by the ratification of the sale the Messrs. Brown & Sons, as purchasers, became chargeable with the entire purchase money, and that by applying the proceeds of sale to the payment of the mortgage debt, the balance due thereon is $447.08, and that after the payment of this balance, Hammond, the mortgagor, is entitled to the surplus of the insurance money. In other words, Brown & Sons are to be treated as having agreed to take the property at their bid of $25,000, although it was in fact damaged by fire to the extent of $17,310.06 after the sale and before it was ratified, and although the property was insured for the express purpose of indemnifying them against loss. Such a contention is against all the facts in the case. As purchasers, Brown & Sons had the right to apply to the Court for an abatement of the purchase money to the extent of the loss occasioned by the fire. *Ex parte Minor*, 11 *Vesey*, 559. This, however, they did not do, because they were fully indemnified against such loss by the insurance fund created for that very purpose, and which had been collected and paid to them with the consent of Hammond, the mortgagor. As a matter of fact, all the parties,—the mortgagor, mortgagees and the underwriters themselves—supposed the loss would exceed $40,000, a sum more than sufficient to pay the amount due on the face of the mortgage which was $36,000; and the mortgagor only claimed the surplus of the insurance after the payment of this sum. It was afterwards

found, however, that the value of the property had been greatly exaggerated, and the actual loss, instead of being $40,000, was ascertained to be only $17,310.06. Then, for the first time, the mortgagor objected to the ratification of account B, on the ground that the four per cent. bankers' commissions allowed by the auditor was usurious, and that deducting these commissions, the amount due on the mortgage was $23,335.67, and not $36,000 as found by the auditor. And then by way of explanation, he requested Mr. Stewart Brown, counsel for the mortgagees, to say to them, that he still considered himself in honor bound to pay these commissions, and would do so if he ever got able, but that his condition was such at that time he could not afford to let a decree go against him for so large a sum. But there was no objection whatever made by him to the mortgagees' right to the $17,310.06. On the contrary, their right to it for the purpose of indemnifying them against the loss which had occurred was all the time conceded by him. And such being the case, Brown & Sons were willing to have the sale ratified, becoming thereby chargeable with the entire purchase money, knowing that they were protected against the loss by the insurance which, by the terms of the policies, was made payable to them. And it was under these circumstances, and with this understanding, that the sale was finally ratified. And not until eighteen months after it had been ratified, and more than sixteen months after the insurance had been paid to the mortgagees,—in fact, not until the appeal cases in the suits against the two companies which had repudiated their liability, had been decided, did the mortgagor set up his present contention. In view of these facts the ratification of the sale cannot be considered as interfering in any manner with the right of the mortgagees to the full amount of the insurance money paid to them, and to which Hammond himself admitted they were entitled. Whether they could claim the insurance *as purchasers*

Bowdoin and Brown *vs.* Hammond.

irrespective of the endorsement on the policies, making the loss payable to them, and without regard to any agreement between them and Hammond, is a question we need not consider.   Several cases were cited, it is true, in support of this contention, but at the same time there is some conflict of opinion in regard to the question. In *Rayner vs. Preston,* 18 *Chan. Div.*, 1, where the vendor contracted to sell a house which was at the time insured by him, and the house was damaged by fire after the date of the contract, but before the time fixed for its completion, COTTON, L. J., and BRETT, L. J., both held that the purchaser who had completed the contract and paid the purchase money, was not entitled as against the vendor to the benefit of the insurance.   But, be that as it may, we rest our judgment in this case on the ground that the property was insured for the purpose of indemnifying the mortgagees against loss by fire, and that the ratification of the sale under the circumstances in this case, in no manner interfered with their right to the insurance.

As to the bankers' commission of four per cent., we agree with the Court below that such a commission must be considered usurious.   It was beyond question an agreement to pay four per cent. in addition to the legal rate of interest, and calling it a bankers' commission cannot exempt it from the operation of the well settled law of this State against usurious transactions.

*Decree reversed, and cause*
*remanded.*