# RENT-A-CAR COMPANY *v.* GLOBE & RUTGERS FIRE INSURANCE COMPANY.

[No. 46, October Term, 1929.]

*Decided January 8th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Parke, JJ.

*Edward L. Ward,* with whom was *George Eckhardt, Jr.,* on the brief, for the appellant.

*Leonard A. Weinberg* and *Howard A. Sweeten,* for the appellee.

Parke, J., delivered the opinion of the Court.

The Rent-A-Car Company is a corporation which, at its principal office located at 701 East Baltimore Street, and a branch office at 1239-41 Light Street, and a second in the 3700 block of Eastern Avenue, carried on in Baltimore, in April, 1926, the business of renting automobiles for hire. About the middle of November, 1927, the business of the corporation, together with its automobiles and equipment and the unexpired term of its lease for 1239-41 Light Street, was sold to Myer M. Astrin, trading as Myers Drive-It-Yourself Company, for $16,000, and on December 1st, 1927, the sale was completed by a delivery to the purchaser, who paid $1,000 in cash, and agreed to pay the remainder in monthly installments and to secure the seller by a lien on the automobiles purchased. Before the various documents of title contemplated by the seller and buyer were executed, an insurance policy was issued by the Globe & Rutgers Fire Insurance Company to Myer M. Astrin, trading as Myers Drive-It-Yourself Company, and the Rent-A-Car Company, to insure them for one year from December 1st, 1927, against loss or damage by fire, lightning and transportation or by theft,

robbery, and pilferage, in an amount not in excess of $13,500 of the actual cash value of the sold automobiles at the time of happening of any loss or damage because of any of the perils against which the insurance was written. The premium was paid by the buyer, the policy was handed to him on December 1st, 1927, and he gave it to the seller to hold. On December 14th, 1927, the parties put in documentary form their contract by the Rent-A-Car Company executing and delivering to Myer M. Astrin, trading as Myers Drive-It-Yourself Company, a bill of sale for the automobiles sold and a sublease for the unexpired term in the Light Street premises; and Myer M. Astrin, trading as set forth, executing and delivering to the seller a chattel mortgage on the automobiles sold to secure the payment of the residue of the purchase price of $15,000 in monthly installments of not less than $150. The contemporaneous execution and successive delivery and recording of these legal instruments were in fulfilment of the agreement between the parties, and simply evidenced in a formal manner the terms of the bargain and sale, and so did not change in any respect the relation of the assured to each other or to the insurer.

The buyer remained in possession of the premises and the subject-matter of the policy until January 3rd, 1928, when a fire occurred. The mortgagee and mortgagor complied with the preliminary requirements of the policy and, they and the insurer having agreed that any action by the underwriter in investigating the cause of the fire and in ascertaining the amount of the loss and damage to the property by fire should not affect any right or liability of either the assured or the insurer under the policy, and the parties not being able to agree as to the amount of the loss, appraisers were named, who selected an umpire, and the three, conformably to the terms of the policy, appraised the sound value of thirty-one automobiles before the fire at $8,600 and the actual damage by fire at $5,275. The insurer declined to pay the loss. In an action at law brought by both of the named assured, the insurer successfully set up the defense that the plaintiff

Myer M. Astrin wrongfully set fire to the premises to collect the insurance on the automobiles; and the judgment at *nisi prius* was in favor of the defendant.

The evidence on the record is that Astrin was the sole incendiary, and that the Rent-A-Car Company, through its agents and servants, neither instigated, knew of, nor participated in Astrin's wrongful act. Astrin has not appealed, and the Rent-A-Car Company concedes, for the purpose of this appeal, the guilt of Astrin. So, the material facts will sufficiently appear from the preceding statement and the following relevant portions of the policy of insurance:

"The Globe and Rutgers Fire Insurance Company, Incorporated, of the City of New York, in consideration of the premium hereinafter mentioned does insure: A. The assured named herein, for the term herein specified, to an amount not exceeding the actual cash value of the property at the time any loss or damage occurs, nor, in any event, the limits of liability, if any, herein specified, against direct loss or damage from the perils specifically insured against herein to the automobiles herein described and the equipment usually attached thereto. * * *

"B. Name of Assured: Myers Drive It Yourself Co. and Rent-A-Car Co.

"Address of Assured: 1241 Light St., Baltimore, Md.

"Subject to all the provisions, exclusions, conditions and warranties contained in this policy, loss, if any, payable, as interest may appear, to Assured and Rent-A-Car Co. * * *

"C. Warranted by the Assured.

"6. The automobile described is fully paid for by the Assured and there is no Lien, Mortgage or other Encumbrance thereon, except as follows: (Give particulars) Notes.

"If purchased on a deferred payment plan, the amount unpaid is $13,750, represented by..........
Notes of $............ each. Due date of first note is.............., 19.... * * *

"Definition of Perils.

"F. Fire, Lightning and Transportation.

"(a) Fire, arising from any cause whatsoever, and Lightning.

"M. * * * General Conditions.

"Misrepresentation and Fraud.

"This entire policy shall be void * * * in case of any fraud, attempted fraud or false swearing by the assured touching any matter relating to this insur-ance or the subject thereof, whether before or after a loss."

The policy does not present any serious difficulty of construction. The assured are specified in the appropriate and provided place as being both the buyer and seller. In the face of this explicit contractual definition, the circumstance that the address of the assured is given as 1241 Light Street does not destroy the import of the plain terms used, since both may well have adopted a common address for the purposes of the policy. Moreover, the omission of the address of one of the then assured is immaterial. Again, the defendant relies upon the phrase "loss, if any, payable, as interest may appear, to assured and Rent-A-Car Co.," to qualify the promise of the defendant that it "does insure the assured named herein." The complete answer to this argument is found in the fact that the nomination of the parties to whom payment is to be made as "Assured and Rent-A-Car Co." is identical in person with the policy's first declaration of the assured as "Myers-Drive-It-Yourself Co. and Rent-A-Car Co."; and that if the name of the buyer were substituted for "assured" in the second combination, the meaning and effect of the paragraph would remain unchanged.

For convenience the expression buyer and seller have heretofore been used in speaking of the assured, but that relation ended with the completion of the sale, when the buyer became the owner of the chattels sold, and a borrower of $15,000 of the purchase price from the seller, who took a chattel mortgage from the buyer on the subject-matter of the transaction

to secure the payment of the loan. Although the formal documents of title had not been executed when the policy of insurance was issued, yet the policy disclosed enough to advise the insurer of the terms of sale yet·to be fulfilled. So, from the inception of the insurance, the relation of the assured to the chattels covered was that of mortgagor and mortgagee, and the insured wrote the policy with a knowledge of the relative rights and obligations of the assured with respect to each other and to the subject-matter of the insurance. The fact that the insurer issued the policy with both the mortgagor and mortgagee as the original promisees distinguishes this appeal from most of the cases, and requires a brief statement of certain doctrines of law relative to fire insurance.

An agreement of insurance against loss by fire is a mere personal contract of indemnity against a possible loss by fire of a valuable interest in a particular subject-matter. The policy is not incidental to or transferable with the subject-matter and does not run with it, unless by virtue of special and foreign stipulations which either have been interpolated in or added to the contract. *May on Insurance* (4th Ed.), sec. 6; *Joyce on Insurance* (2nd Ed.), secs. 23, 24. So, a mortgagee has no right to claim the benefit of a policy underwritten for the owner or mortgagor, unless by reason of some express agreement to that effect. *Heller v. Marine Bank,* 89 Md. 602, 621. Such a special agreement is sometimes incorporated, in the body of the policy when issued, in the form of a direction to the insurer to pay the loss to the mortgagee, or to him as his interest may appear (*a*); and often it is later endorsed on or affixed to the policy in the form of a separate document or rider (*b*). But whether this provision was made, by incorporation or addition, at the inception of the policy, or was subsequently attached as a part of the contract, with the assent of the insurer, the original contract remains as a contract of guaranty to the original assured, and the property must be his at the time of the loss, and the mortgagee does not recover nor collect as the party insured,

but as the payee, appointee, fiduciary, or assignee of a party who has an insurable interest and a right to recover, which has been transferred in whole or in part to the assignee or fiduciary, payee, or appointee, with the consent of the insurer. So, if the loss be made payable to the mortgagee as his interest may appear, the general rule is that the mortgagee is only entitled to receive, to the extent of his mortgage claim, what may be found to be due the insured in case of loss, subject to all the defenses of the insurer as against the insured. As the rights of the mortgagee under such a policy are derivative, the mortgagee has no greater rights than those of the assured, whose breach of contract or wrongful conduct before the loss happens will be imputed to the mortgagee. Consequently, whether the policy be invalid, or the mortgagor forfeit his right to recover before the loss occurs, or fraudulently cause or procure the loss, the mortgagee is equally barred. The cases illustrating this principle are numerous (c).

(c) *Agricultural Ins. Co. v. Hamilton,* 82 Md. 88, 96-97; *Johnston v. Phoenix Ins. Co.,* 39 Md. 233, 240; *Citizens' Fire Ins. Co. v. Doll,* 35 Md. 89, 109; *May on Insurance* (4th Ed.), secs. 378, 379, 382.

(b) *Bowdoin & Brown v. Hammond,* 79 Md. 173; *Farmers' Fire Ins. Co. v. Baker,* 94 Md. 545.

(a) *Coates & Bro. v. Penn Fire Ins. Co.,* 58 Md. 172, 178; *Hough, Clendening & Co. v. People's Fire Ins. Co.,* 36 Md. 398, 431; *Nat. Fire Ins. Co. v. Crane,* 16 Md. 260-293, 294; *Smith v. Germania Fire Ins. Co.,* 102 Or. 569, annotated in 19 A. L. R. 1449-1454.

These cases, however, are distinguishable from the one at bar, because here the mortgagee is not the assignee, payee, appointee, or fiduciary of the mortgagor, but is, with the mortgagor, an original and principal promisee under the insurance agreement. In the instant case, the principals to the contract are the insurer and the mortgagor and mortgagee, which are the assured. The promise of the underwriter ran to the mortgagor and mortgagee, who were to be paid any loss as their interest might appear. *Bakhaus v. Caledonian Ins.*

*Co.,* 112 Md. 676, 691-693; *Dakin v. Liverpool etc. Ins. Co.,* 77 N. Y. 600, 603. The mortgagor and mortgagee were liable for the payment of the special premium, and were bound by the warranties and conditions upon which the issuance of the policy was conditioned, and by the several stipulations on the part of the assured. In order better to understand the relative rights of the mortgagor and mortgagee under the indemnity contract, it will be necessary to consider if they each had insurable interests and in what manner their respective interests in the subject matter could be guaranteed against loss by fire.

It was early recognized that a mortgagor has an interest in either realty or personalty which may be insured, and that the mortgagee may insure the same property to secure his lien. Further, the mortgagor and the mortgagee may insure their several interests in separate and distinct policies of insurance, by the same or different insurers, at one or different times; and, again, they may insure their several interests, as was done in the instant case, by a single policy. *Allen v. Mut. Fire Ins. Co.,* 2 Md. 111, 123, 124; *Washington Fire Ins. Co. v. Kelly,* 32 Md. 421; *Frontier Mortgage Corp. v. Heft,* 146 Md. 1, 13; *Bakhaus v. Caledonian Ins. Co.,* 112 Md. 676, 691, 692; *Royal Ins. Co. v. Stinson,* 103 U. S. 25, 26 L. Ed. 473; *Carpenter v. Providence Washington Ins. Co.,* 16 Pet. 495, 10 L. Ed. 1044; *Columbian Ins. Co. v. Lawrence,* 2 Pet. 25, 7 L. Ed. 335; *Honore v. Lamar Fire Ins. Co.,* 51 Ill. 409; *Hathaway v. Orient Ins. Co.,* 134 N. Y. 409, 32 N. E. 40; *Foster v. Equitable etc. Ins. Co.,* 2 Gray (Mass.), 216; *Smith v. Union Ins. Co.,* 25 R. I. 260; *Joyce on Insurance* (2nd Ed.), secs. 1026, 1031, 1036, 1041; *Tiffany on Real Property* (2nd Ed.), vol. 3, sec. 617, p. 2457.

As was recently stated for this Court by Judge Digges in *Frontier Mortgage Corp. v. Heft,* 146 Md., at page 13:

"The mortgagor and mortgagee may each insure his own interest; the first insures the property, which he may do for its full value as the owner thereof; the latter, to the extent of his debt, and no farther. The first, notwithstanding the

encumbrance on his property, is entitled to recover the full amount of his loss within the limits of the insurance; the latter, if the premises are destroyed by fire before the extinguishment of the mortgage, has the right to be paid his debt by the insurers, if not more than the insurance; and the underwriters, in such a case, become entitled to the debt, and can recover the same from the mortgagor and are subrogated to the rights of the mortgagee. The payment of the insurance does not discharge the mortgagor from the debt, but the insurers become his creditors and have a right to an assignment of the mortgage debt from the mortgagee. The mortgagor derives no benefit from a policy covering the interest of the mortgagee alone, but is bound to pay the mortgage debt to the insurers when they become his substituted creditors." *Washington Fire Ins. Co. v. Kelly*, 32 Md. 421, 441; *Carpenter v. Providence Washington Ins. Co.,* 16 Pet. 501; *Seidewitz v. Sun Life Ins. Co.,* 144 Md. 508, 514-516.

The appraisement under the policy in the pending appeal determined that the direct loss or damage by fire to the property covered by the policy on this record was $5,275, and this amount was payable to the assured as their interest mght appear. *Bakhaus v. Caledonian Ins. Co.,* 112 Md. 692, 693. If the several interests of the assured had been covered by a separate similar policy, for the same amount of liability, the application of the principles stated by the decisions quoted would have resulted in the insurer paying $5,275 to the mortgagor for his loss; and a like sum to the mortgagee, as the mortgage debt is greater than the loss by fire; and therefore the insurer would become entitled to enforce the amount of the debt paid against the mortgagor, and to the same extent would be subrogated to the mortgage lien of the mortgagee. But where a single policy of insurance provides for the payment of the loss to the mortgagor and mortgagee as their several interests may be, the circuity of the method illustrated in the event of there being a separate contract of indemnity for the mortgagor and mortgagee is avoided

through the stipulation that the loss is payable to the assured according to their respective and ascertained interests. As between the mortgagor and mortgagee, the interest of the mortgagee, being that of the legal owner of the subject-matter, is paramount to the interest of the mortgagor, whose interest is equitable and is called the equity of redemption. Accordingly, the insurer will be allowed as a credit, against the mortgagor's demand, the amount of loss paid or payable to the mortgagee on account of his unsatisfied mortgage debt, and thus the payment of the loss liquidates both demands against the insurer. *Supra*. In other words, the object and effect of the special form of policy adopted was to insure to a limited maximum the amount of loss by fire occasioned to the insurable interests of both the mortgagor and the mortgagee at the time of the happening of the contingency against which indemnity was provided; and to agree that this single sum should, if there were a necessity, be divisible, and be payable to the mortgagee to the extent of its interest, which would be the amount of the mortgage debt secured by the legal title granted by the mortgagor, and the residue, if any, to the mortgagor, who owned the equity of redemption; or, if the mortgagee's interest had theretofore been determined by the payment or release of the mortgage debt, that the entire loss should be payable to the owner as having regained an interest in severalty through the extinction of the mortgagee's interest.

The discussion thus far has been upon the hypothesis of each of the assured not being chargeable with the wilful setting fire to the property insured, but, if the fire be incendiary, the guilty assured can take no benefit under the policy. So, the evidence in this case establishing that the mortgagor wilfully and corruptly set fire to the subject of the insurance, the mortgagor can not recover for his loss. *Maryland Fire Ins. Co. v. Whiteford,* 31 Md. 219, 227. The mortgagee, however, appears to have been innocent of any wrong-doing. The owner's act on this record was without the mortgagee's participation, instigation, knowledge, acquiescence,

or consent. Under these circumstances, will the fraud of one of the assured avoid the policy as to the innocent assured, when the legal relation between the two is that of mortgagee and mortgagor and owner?

As has been stated, the agreement of the insurer is with both owner and mortgagee as original promisees. By the terms of the policy the promise to the mortgagee is not vicarious, as would be the case if his rights were derivative. The mortgagee has a several and distinct insurable interest, and his claim as one of the original parties to the contract is primary, and not secondary. The contract does not admit of a different construction without doing violence to its plain intention. The mortgagee cannot be held to stand in the relation of an appointee, assignee, or payee of the owner, without striking out the language making the mortgagee an assured, and interpolating words which would indicate that the owner was the source of the mortgagee's rights. Where the contracting parties have clearly expressed their agreement in writing, it would be a dangerous precedent for the court to step aside from its province to vary the natural and reasonable effect of their language. So long as they keep within the law, parties are at liberty to contract at will. Accordingly, the contract at bar must be taken as one of indemnity for each of the assured in his several and distinct rights. The relation of owner and mortgagor and of mortgagee is not that of joint owners, as in partnership or joint tenancy, because the interest of one is legal and of the other equitable; and the right of possession of mortgagor or of mortgagee is exclusive of the right of the other, since the chattel mortgage provided that the mortgagor should have possession and use of the chattels until default in the payment of the monthly installments of the mortgage debt. *Shorter v. Dail,* 122 Md. 101; *Cahoon v. Miers,* 67 Md. 573; *McGuire v. Benoit,* 33 Md. 181; *Clemmitt v. Miehle Printing Co.,* 136 Md. 385.

At the time of the fire, the mortgagor was in actual possession and control of the chattels on his own premises, in ac-

cordance with the terms of the chattel mortgage and as contemplated by the insurer. The owner's criminal act was neither expressly directed nor in any way participated in by the mortgagee, and was done for the owner's private ends and not in the interest of the mortgagee, whose security for the loan was destroyed by the incendiary. Upon the theory of the mortgagee being an original promisee and free from fault, and the absence of any legal relation or contractual obligation imposing upon the mortgagee responsibility for the owner's setting the chattels on fire, the insurance carrier can not defeat the mortgagee's right of recovery upon the policy in suit because of the owner's incendiary act. Under such circumstances, the wilful burning by a mortgagor in rightful possession is the act of a third person so far as the rights of an innocent mortgagee are concerned. As stated by *Richards on Insurance* (3rd Ed.), sec. 231: "The policy includes loss by the incendiary act of the insured if insane, and includes the unintentional or careless acts of third persons, whether his agents or not, as well as their criminal acts; but if the fire is caused by the wilful act of the insured himself, or of some one acting with his privity or consent, the insurer will be exonerated. Arson by the wife of the insured without his connivance would be no defence to the company." *Midland Ins. Co. v. Smith,* 6 Q. B. Div. 561, 567, 568; *Henderson v. Western etc. Ins. Co.,* 10 Rob. (La.) 164; *Walker v. Phoenix Ins. Co.,* 62 Mo. App. 209, 218; *Westchester Fire Ins. Co. v. Foster,* 90 Ill. 121, 125; *Feibelman v. Manchester Fire Assur. Co.,* 108 Ala. 19; *Union Ins. Co. v. McCullough,* 2 Nebr. (Unof.) 198, 203, 96 N. W. 79.

The remaining question is whether by any special term the contract of insurance made an innocent mortgagee responsible in law for the guilt of the owner for the incendiary fire. The policy insured "against fire arising from any cause whatsoever." The contract, however, was drawn subject to the condition, during the pendency of the risk, that the contract would be void in the event of fraud "by the assured touching

any matter relating to this insurance, or the subject thereof, whether before or after a loss." If the contract be construed literally, the word "assured" in the condition quoted means both the mortgagor and the mortgagee, since the policy declared the assured to be "Myers-Drive-It-Yourself Company & Rent-A-Car Co." So, the contingency guarded against is not the fraud of either assured, but of both, so long as their relation is that of two principal promisees, and, therefore, neither can be affected by the independent fraud of the other in which he in no way acquiesced nor participated. As the respective interests of these promisees were not joint but separate and distinct, and as neither was the agent of the other, and the possession of the mortgagor, until default, was exclusive and of right, it is so manifestly unreasonable to cast upon an innocent party the burden of the guilty that it is but just to conclude that, if the insurer had intended the fraud of either to avoid this contract as to both, it would have employed apt words for that purpose. *McEvoy v. Security Fire Ins. Co.,* 110 Md. 275, 279-281. This conviction is strengthened by leaving the letter of the policy and seeking the intention of the parties as revealed by the language used, when weighed in connection with the subject of the contract, the interests and relation of the parties, and the purposes to be accomplished by the agreement.

In the first place, the term "assured" may be singular or plural in number according to the circumstances. The word is employed to mean those who are to be indemnified against a loss by fire to an insurable interest, and, therefore, may include one or more original promisees; and the assured may be plural at the beginning of the contract and single at the happening of the loss. This is due to the contract being one of indemnity and to its frequently covering different interests in the subject matter. The contract now under consideration affords an illustration of the suggested probabilities. As originally written the policy was issued to the owner and mortgagee of chattels to indemnify them against loss by fire, as their several and distinct interests would appear at the

happening of the contingency. If on that occurrence the sum payable was in excess of the mortgage debt, there would be an interest in both the owner and the mortgagee, on account of which each would receive from the insurer a proportionate amount of the insurance payable; and the assured, according to the terms of the policy, would be plural in number and comprise the owner and the mortgagee (*a*). Again, if before the loss the owner had paid the mortgagee the debt, the mortgagee would have no loss to be indemnified, and, so, the total insurance would be paid to the owner, and he would be the sole assured (*b*). And thirdly, which was as it happened, if the amount of loss payable be less than the unpaid mortgage debt, the whole would be paid by the underwriter to the mortgagee, which would be the single claimant (*c*). In every one of these instances, the underwriter would pay in strict compliance with the stipulations of the contract, and yet the assured would be different in every case. If the second illustration were applicable to the situation, the mortgagee would not be an assured, and, if the mortgagee had been the incendiary, the fraudulent act would not have avoided the policy, the owner being guiltless of any misconduct. So, by this touchstone, it appears that the word assured is not to be taken literally and held to signify, independently of the circumstances at the time of the loss, the original promisees. It is in harmony with the other provisions of this particular contract to conclude that the fraud, concealment, misrepresentation, or false swearing mentioned in the condition of the policy relating to misrepresentation and fraud is limited to the assured to whom loss is payable because of his insurable interest at the time of the fire. This conclusion is not open to the objection that the owner is indirectly benefited by the discharge of his mortgage debt to the extent of the money paid by the underwriter, since, the loss having been caused by the wrongful act of the owner, the underwriter is now his creditor in the amount paid (*d*). In addition, the payment to the mortgagee is on account of his insurable interest, which is a separate and dis-

tinct right that is not derivative from the owner. *Supra,* and see:

(a) *Fire Ins. Assn. of England v. Merchants & Miners Transp. Co.,* 66 Md. 339, 347-350; *Hough, Clendening & Co. v. People's Fire Ins. Co.,* 36 Md. 400, 432; *Heinz v. German Bldg. Assn.,* 95 Md. 160, 169; *Callahan v. Linthicum,* 43 Md. 97, 102-104.

(b) *Coates & Bro. v. Penn etc. Co.,* 58 Md. 172, 177-179.

(c) *Hanover Fire Ins. Co. v. Brown,* 77 Md. 64, 77-78; *Farmers' Fire Ins. Co. v. Baker,* 94 Md. 545, 562, 563, equity; *Bowdoin & Brown v. Hammond,* 79 Md. 173, 179, 180, equity; *National Fire Ins. Co. v. Crane,* 16 Md. 260, 293, equity.

(d) *Packham v. German Fire Ins. Co.,* 91 Md. 515, 523-525.

The problem on the present record seems one of first impression. As stated in both *Joyce* and *Cooley,* it has been held that where a policy, issued to A, mortgagee, and B, mortgagor, contained a provision that the loss by fire was to be paid first to the mortgagee as his interest might appear; and B, the mortgagor, who in reality had no financial interest in the policy, afterwards caused the destruction of the building by fire without the mortgagee's privity or consent, the incendiary act of the owner B did not preclude A's recovering on the policy. 6 *Cooley's Briefs on Insurance* (2nd Ed.), pp. 4941, 4942; *Joyce on Insurance* (2nd Ed.), sec. 3732, p. 6093; *Westchester Fire Ins. Co. v. Fraser,* 90 Ill. 121, 125. On the other hand, in *Bellman v. Home Ins. Co.,* 178 Wis. 349, reported and annotated in 27 *A. L. R.* 945, it was decided that an innocent partner cannot recover on an insurance policy upon partnership property wrongfully burned by his co-partner, but the court laid its emphasis on a provision of the policy whereby the parties agreed to use all reasonable means at and after a fire to preserve the property. See *American Fire Ins. Co. v. Hazen,* 110 Pa. 530. The legal relation between the original promisees in the pending case distinguishes it from the case last cited, since "within the scope of the partnership business, each partner is the

agent of all the other partners for the transaction of the partnership affairs, and his acts are the acts of all." *Mechem on Agency* (2nd Ed.), sec. 185. However, the present problem does not concern a partnership; and, on principle and the terms of the policy in suit, the mortgagee should not be precluded from a recovery against the underwriter for his loss by the incendiary fire. This construction gives effect to the intention of the parties as gathered from the instrument when read in connection with the relation of the parties, the situation of the subject matter, and the nature and purpose of the contract; and avoids a forfeiture of the rights of an innocent party without contravening the condition of the contract and rule of public policy that an incendiary cannot recover for a loss originating in his criminal conduct.

The defendant's theory that the wilful setting on fire by the mortgagor of the chattels insured was sufficient to bar a recovery by the mortgagee, notwithstanding the mortgagee neither participated in, knew of, nor consented to, the mortgagor's wilful burning, was adopted by the court when it granted the defendant's second, third, fourth and fifth prayers, and rejected the mortgagee's third, fourth and fifth prayers. There was, therefore, reversible error in the granting of defendant's second, third, fourth and fifth prayers. The mortgagee was entitled to have its contention that the mortgagor set the property on fire without the mortgagee's privity and consent submitted to the jury. The defendant did not object to the prayers presenting this theory on the ground of any formal defect, but the three prayers referred to should have been more explicit and clear, as they permit the argument that the mortgagee could not have become responsible for the fire by command, connivance, or conspiracy as well as by direct participation in its physical preparation and start.

In our judgment the terms of the agreement between the parties providing for a non-waiver of rights and liability included the facts relied upon by the mortgagee's sixth prayer, which was, therefore, properly rejected. *Citizens' Fire Ins. Co. v. Doll,* 35 Md. 89, 101-102.

The defendant's sixth prayer was an abstract proposition

which was of no practical merit or guidance, but tended to confuse the jury, and should have been refused.

The other exceptions are to the rulings on the evidence and they present no reversible error.

The mortgagor took no appeal, and the judgment against him should be affirmed, but, for the errors on the prayers, the judgment against the mortgagee must be reversed, and the cause remanded for a new trial with the mortgagee as plaintiff and the insurer as defendant. Code, art. 5, sec. 26.

> *Judgment affirmed as to Myer A. Astrin, trading as Myers-Drive-It-Yourself Company; and judgment reversed as to Rent-A-Car Company and cause remanded for a new trial between the Rent-A-Car-Company and the appellee, with costs to be paid by the appellee.*