# MARYLAND HOME FIRE INSURANCE COMPANY
## *vs.* MARY A. KIMMELL ET AL.

*Mistake in Policy of Fire Insurance—Bill for Reformation of Policy and Payment of Loss—Re-opening Decree for Payment—Offer to Rebuild.*

A policy of fire insurance was issued on property therein stated to belong to a husband, and the loss was made payable to a certain named person as mortgagee. After destruction of the property by fire, a bill was filed alleging that, in fact, it belonged to the wife of the assured ; that a person other than the one named in the policy was the mortgagee ; that the insurance company's agents were informed of these facts at the time of the issue of the policy, and that the form of the policy as issued was the result of mutual mistake. *Held,* that since these allegations were established by evidence, the Court would decree a reformation of the policy, and at the same time direct payment of the loss, which was alleged and proved to be total.

A bill for the reformation of a policy of fire insurance to correct a mistake, alleged also a total loss and asked for its payment. The answer admitted the loss and plaintiff's evidence established the same, and that there had been no overvaluation. Defendant produced no testimony as to the valuation. *Held,* that after a decree for payment it is too late for defendant to seek to re-open the case and produce evidence of overvaluation or to offer to rebuild the property, since under the policy, notice of the insurer's intention to rebuild must be given within thirty days after proof of loss, and such proof had been furnished more than a year before the decree was made.

Appeal from a decree of the Circuit Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*Thomas S. Hodson* and *J. Henning Nelms,* for the appellant.

*John T. Mason, R.,* for the appellees.

FOWLER, J., delivered the opinion of the Court.

The Maryland Home Fire Insurance Company issued to Samuel F. Kimmell a policy against loss by fire on a dwell-

ing-house situated in Garrett County, which, according to the policy, was his property. The policy was for $1,500. The premiums have been duly paid. On the 1st September, 1897, the house was totally destroyed by fire, and when proof of loss, to which no objection has been made, was furnished, the company discovered that Samuel F. Kimmell had been named in the policy as the owner and insured, when in fact the house and the land on which it stood was the property of his wife, Mary A. Kimmell. For this reason the insurance company refused to pay the loss, and thereupon the bill in this case was filed to reform the contract so as to read in the name of Mary A. Kimmell, the actual owner of the insured premises. There was another alleged mistake. It appears that prior to taking the policy, Mrs. Kimmell, the owner of the property, and her husband, Samuel F. Kimmell, executed a mortgage on said property to James R. Bishop, to secure the payment of the sum of $1,500, and therein agreed to insure the improvements to an amount of at least one thousand dollars, and to cause the policy to be so framed or endorsed as in case of fire to enure to the benefit of said Bishop, his heirs or assigns, to the extent of his mortgage-claim or lien. Gilmor S. Hamill was named in the mortgage as the attorney or trustee to sell the property in case of default, and the policy made the loss payable to said Hamill instead of to said Bishop, who was the real mortgagee and holder of the mortgage. The bill asks that the policy shall be reformed in this respect also, and that when so reformed as prayed, it may be enforced, and that the said company may be compelled to pay the loss according to the terms of the reformed policy.

The company answered, alleging that Mary A. Kimmell did not make application for a policy, and that none was ever issued to her by it or its agent, and claiming that the policy was intended to be issued to Samuel F. Kimmell, and that his interest in the insured property and none other was intended to be covered. It is also claimed that there

should be no correction of the policy by inserting the name of said Bishop in the place of that of said Hamill. And finally it is alleged in the answer that if there was any error, and even if it was due to the alleged fact stated in the 6th paragraph of the bill, which is denied—namely, that the agent of the company, when about to issue said policy, examined the records of Garrett County and saw a deed from said Hamill to Samuel F. Kimmell and wife, and a mortgage to said Hamill, and supposing the property mentioned in this deed and mortgage to be the property to be insured, when in point of fact it was not, he made the policy in the name of said Samuel F. Kimmell, and made the loss payable to the said Hamill, yet, conceding such error, the relief asked should not be granted, because the minds of the parties, the insured, Samuel F. Kimmell, and the said company, did not meet, and not only did they fail to agree *upon the same property*, but failed also to agree or take into consideration the same person. These are substantially the defences set up by the insurance company. It took no testimony except that of one witness, who proved that he was a director and member of the executive committee, that it was incorporated by the Legislature of Maryland, and that certain by-laws, incorporated in the policy, were in existence when said policy was issued. Samuel F. Kimmell, who effected the insurance, his wife, Mary A. Kimmell, the owner of the insured house, and Wm. A. Daily, the agent of the company who negotiated and prepared the policy, were examined on the part of the plaintiffs to establish the allegations of the bill.

The Court below decreed that the plaintiffs were entitled to the relief prayed, and directed that the policy should be reformed in accordance with the prayer of the bill, and that the defendant company should pay to the plaintiffs the sum named in the policy with interest. From this decree the defendant has appealed.

In disposing of the case the learned Judge below said, "this is a plain case of mistake, for which the agent of the

defendant company is largely responsible." In this view
we entirely agree. Mary A. Kimmell had purchased the
land on which the building in question was located, and she
and her husband had mortgaged it to James R. Bishop, to
secure $1,500 which he had loaned to her to complete the
purchase, and the mortgage contained the usual provision,
as additional security, that the improvements were to be
insured, and the loss, if any, was to be payable to the mort-
gagee. For the purpose of obtaining the policies mentioned
in the mortgage, application was made by the husband on
behalf of his wife to the defendant company, and its agent,
Wm. A. Daily, at Oakland, Garrett County, went to the
premises. The agent inspected and measured the buildings
and agreed to issue a policy on the house for $1,500. Sub-
sequently the husband, at the request of Mr. Daily, went to
his office in Oakland, and he thus describes what took place
there : " I went to his office and he proceeded to draw up
the policy, and he started to head the policy with my name,
and he had Samuel F. written on the policy, and I told him
that the property was in my wife's name, and he asked me
if there was a mortgage on the property; I told him there
were $1,500, and he said that it did not make any differ-
ence, it would be payable to *the mortgagee*, and he asked me
who to make it payable to and I told him Gilmor S.
Hamill."

The agent of the defendant, Mr. Daily, gives substan-
tially the same account of the transaction, as follows :
" Saml. F. Kimmell applied to me for $1,500 upon his
dwelling-house. I asked him what the property was worth ;
*after I issued the policy to him I gave it to him to read, and
he then told me it belonged to his wife ;* I then asked him
whether his name was Samuel E. Kimmell or Saml. F.
Kimmell, and he stated it was Samuel F. Kimmell ; I then
told him, you have an insurable interest in the property, I
presume, and it is not then necessary to change the policy;
that is all that was said in regard to the title. I asked him
if there was a mortgage on the property and if loss oc-

curred, to whom it should be paid, and he said to Gilmor S. Hamill." This witness also testified that he issued a policy for $1,500 on the house and $1,000 on the barn, because he valued the property at $3,500.

It is perfectly apparent from this testimony that the object of the Kimmells was to insure the wife's property in order to comply with the requirements of the mortgage which they had given to Bishop—and it is equally clear that the agent of the company inspected, valued and insured the property of the wife in the name of the husband in spite of the fact that he was informed it *was hers.* It is also apparent that he insured its whole value, and not any mere contingent interest dependent upon the husband surviving his wife. The agent himself testifies that the mistake arose from a mistake he made in regard to certain conveyances of property to the plaintiffs from Mr. Hamill, *and from a reluctance on his part to destroy that policy and write another.* Under these circumstances, we think it too clear for controversy that there was a mistake on both sides—a mutual mistake. Indeed, the undisputed testimony of Samuel F. Kimmell shows that the agent of the company admitted that the mistake in the policy was his. It is true this testimony was objected to, but no exception has been filed to it, so far as the record shows, and we may, therefore, properly consider it.

There being, therefore, in our opinion no doubt in regard to the existence of the mistake which was caused in part by the excusable ignorance of the husband in regard to insurance business and the preparation of the policy, and in part from the erroneous conclusions of the agent from information in his possession, as well as from a disinclination to destroy the policy and write another, after he had in his possession the information that the property belonged to the wife and not to the husband, there can be no question of the jurisdiction of a Court of Equity to reform the contract and at the same time to enforce it as reformed by administering full relief by a decree of payment of loss when

the evidence of its extent is satisfactory. *Phœnix Ins. Co.* v. *Ryland & Brooks,* 69 Md. 449; *Miller's Equity Procedure,* sec. 669, note 2, page 776, and authorities there cited.

And this brings us to the consideration of the question whether we have such evidence in this case. We think there is no doubt of it. The bill alleges a total loss. The answer not only admits it, but raises no question as to its amount. The defendant's agent, in pursuance of his duty to determine the amount of the policy he would issue, inspected and measured the house and agreed to place $1,500 thereon and $1,000 on the barn, because he valued *the property* at $3,500. The fact that he was willing to issue a policy on the house for $1,500 is sufficient proof, we think, that in his judgment at least (and he was acting for the defendant), it was worth certainly that much—as it is well known that property is not generally insured for its full value. But in addition to this, the same witness, upon cross-examination, in answer to the question, " what are the buildings that remained on the premises worth without the dwelling," replied that the barn was worth or could be built for a great deal less than two thousand dollars. If, according to his valuation, the two buildings were worth $3,500, and the barn less than $2,000, it follows that the house was worth at least $1,500—the amount named in the policy. But it is clear that if the defendant intended to rely upon its right to question the value its own agent placed upon the property, it should have offered satisfactory evidence to show that he had made an overvaluation. It has failed not only to offer any such evidence, but it has set up no such a defence in its answer.

Subsequently, however, to the passage of the decree appealed from, the defendant filed in the Court below a motion to strike out so much thereof as requires it to pay the plaintiffs the sum of $1,500 for the purpose of filing an amended and supplemental answer, which was at the same time tendered to be filed. Waiving the irregularity

of such a proceeding, we think it is apparent there is no merit in the application.   The supplemental answer asks that the defendant may be allowed to ascertain the actual cash value of the house at the time it was destroyed by fire, alleging it was worth only $400.   It also prayed that it might be allowed to discharge its obligations under the reformed policy by paying said amount, or if that cannot be done, that then the defendant be permitted to rebuild said house as provided in the policy, and thus discharge its obligation.   But it follows from what we have already said, that having had an opportunity to offer evidence of an overvaluation, and their own agent having been examined and cross-examined upon that subject, and no reason appearing that any additional or better evidence could be offered, even if allowable in the manner now suggested, the Court below was entirely right in refusing to open the decree upon this ground.

And it is equally clear that it was right upon the other ground relied on in the supplemental answer, namely, that the defendant should be allowed to exercise its option to rebuild.   By the policy this right of the defendant must be exercised within "a reasonable time"—and notice of the intention to do so must be given "within thirty days after receipt of the proof of loss."   More than a year, however, elapsed since the proofs of loss were furnished, before an offer to rebuild was made or notice thereof given.

*Affirmed with costs.*

(Decided June 20th, 1899).