# NETTIE J. SHOOP

## *vs.*

# FIDELITY & DEPOSIT COMPANY OF MARYLAND.

# FIDELITY AND DEPOSIT COMPANY

## *vs.*

# NETTIE J. SHOOP.

*Practice Act: Baltimore City; withdrawal of pleas; replica-
tions; effect of—; waiver of rights under Act. Appeals:
when erroneous rulings no ground for—. Trials at
law: right to open and close; damage suits. Pleas:
limiting right of recovery to sum named; not
a tender of such amount. Interest: ques-
tion for jury. Insurance policies:
warranties by assured; estoppel
against insurer. Experts:
sales agents. Words:
special meaning.*

In a suit under the Practice Act of Baltimore City—Balti-
more City Charter, sec. 312 (see Baltimore City Code, 1906,
p. 265)—pleas which had been filed in the time required by
statute, were withdrawn by leave of Court in writing, and new
pleas filed, supported by affidavit and a certificate; to these
pleas the plaintiff filed a replication and proceeded to trial;
on appeal from the ruling of the Court in permitting the pleas
filed to be withdrawn, it was *held,* that the replication and the
proceeding with the trial amounted to a waiver by the plaintiff,
of the right to raise, on appeal, the question of the correctness
of the ruling.                                                    p. 133 .

In such a case, the proper course is to decline to reply, and
suffer judgment by default, from which judgment an appeal can
be taken.                                                      pp. 133-134

Even if such an appeal could have been allowed, the judg-
ment should not have been reversed, as the ruling appealed

from caused no injury to the plaintiff (the appellant), since it appeared that the judgment was in the plaintiff's favor for the full amount of the claim.                                    p. 134

Erroneous rulings of a trial court do not afford reversible error, when it appears that no injury to the party appealing was caused thereby.                                    p. 134

The question of the right to open and close a case is that the right belongs to the party against whom judgment would be rendered if no evidence were introduced on either side.    p. 136

A plea of a defendant seeking to limit the right of the plaintiff to the recovery of a particular sum named, amounts to the denial *pro tanto* of the plaintiff's claim, and requires the plaintiff to adduce evidence in order to sustain his claim; under such circumstances, the plaintiff is entitled to open and close the case.
                                    p. 136

Where the only question submitted to a jury is the question of the amount of damages, the right to open and close the case is properly given to the party claiming the damages.    p. 137

The word "supervise" or "supervising," as used in insurance contracts, is not a word with so clear, distinct and definite a meaning as to render inadmissible, any extraneous parol evidence to explain it.                                    p. 137

A word whose meaning is generally clear, may be shown to have a special meaning in a certain trade or occupation, when the exact meaning of the word is in question.            p. 137

Where a "selling" agent of a motor-boat manufacturing company, among other things, has traveling and *supervising* duties, not including setting up or testing of machinery, the word "supervise" did not exclude the duty of inspecting and examining the motor boats.                                    p. 138

An accident insurance company had issued an insurance policy, where the applicant, in the schedule of warranties, had given notice to the company that he had *supervising duties,* etc.; the insurance company, without inquiring what those duties were, had assumed to know of what they consisted; *held,* that, under such circumstances, the company should not be allowed, in a suit upon the policy, to restrict the meaning of the term, or to

exclude evidence tending to show the full field of employment of the assured, in the particular trade or occupation to which he had represented himself as belonging.                    p. 139

Interest is ordinarily a matter which rests in the discretion of the jury, but a plaintiff may debar himself from demanding interest where a tender of an amount has been made and refused, and the amount of the verdict, exclusive of interest, does not exceed the amount tendered.                    p. 139

The plea of a defendant, to the effect that the plaintiff is not entitled to recover more than a sum named, does not amount to a tender of such sum, so as to affect the plaintiff's right to interest thereon.                    p. 139

Expert witnesses, who, from study or experience, have acquired a peculiar knowledge in regard to the matter in dispute, may testify, not only as to the facts, but may also give their opinion, based upon facts within their own knowledge, or upon facts proved by other witnesses.                    p. 138

The weight of the evidence, in such cases, is a matter for the consideration of the jury.                    p. 138

A citizen who for many years has been engaged, by many firms, as agent in the sale of gas engines for the use of motor boats, and knew from his experience what was required of such agent, may testify as to what such requirements are.    p. 138

*Decided June 26th, 1914.*

Two appeals in one record from the Court of Common Pleas of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BURKE URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Karl Singewald* and *Washington Bowie, Jr.,* for the Fidelity & Deposit Company.

*Charles W. Main* and *William W. Varney,* for Nettie J. Shoop.

STOCKBRIDGE, J., delivered the opinion of the Court.

The record in the above entitled case contains two appeals, one appearing on the docket of this Court as No. 48, being the appeal of Nettie J. Shoop against the Fidelity and Deposit Company of Maryland, and the other being No. 60, an appeal of the Fidelity and Deposit Company from a judgment rendered against it in favor of Nettie J. Shoop.

A motion has been filed to dismiss the first appeal, and that motion must prevail. The suit in this case was one instituted under what is known as the Practice Act of Baltimore City [Balto. City Charter, sec. 312 (see Balto. City Code, 1906, p. 265)], to recover for the death of Frank J. Shoop, husband of Nettie J. Shoop, upon an accident policy issued by the Fidelity Company in June, 1911. To the suit so brought the defendant at first filed five pleas, within the time required by the statute, and on Feb. 18, 1914, by leave of the Court in writing withdrew all of the pleas theretofore filed on its behalf and filed in lieu a new plea supported by affidavit and certificate. This ruling of the Court in permitting the defendant to withdraw the pleas as originally filed constituted the ground of Mrs. Shoop's appeal. The order for the appeal states that it is also from the ruling of the Court overruling the motion of the plaintiff for a judgment, but no such motion appears in the record. On the same day that the pleas were withdrawn and the new plea filed, the plaintiff filed a replication thereto, a jury was empanelled for the trial of the case and on the next day a verdict was returned in favor of the plaintiff for $2,887.50, the full amount claimed. There are two obvious reasons why the motion to dismiss must prevail. In the first place by the filing of replication and proceeding to trial the plaintiff waived her right to raise, on appeal, the correctness of the ruling of the Court. The proper course to have pursued, if it was desired to call in question the correctness of that ruling, would have been to decline to reply and suffer a judgment by default to be entered against her, and appeal from

such judgment. Not having done so, she is now precluded from raising the question. *Traber* v. *Traber,* 50 Md. 1. In the second place, even if the ruling of the Court had been incorrect, and she could raise that question on her appeal in this case, she was, nevertheless, not injured by the ruling of the Court because the verdict returned, and upon which judgment was entered, was for the full amount of her claim. *Coates* v. *Mackey,* 56 Md. 420; *Bear* v. *Robbins,* 117 Md. 213.

Turning now to Case No. 60, the appeal of the Fidelity and Deposit Company against Shoop. the case presented is briefly as follows: Mr. Shoop was the agent of the Mianus Motor Works. On the 5th of June, 1911, he took out what is commonly known as an accident policy of insurance, with the defendant company, for the sum of $2,500. The policy contained a provision that in addition to the sum named, the same should be augmented by an accumulative amount, such as would increase the sum specified in the said policy by 10%, upon an annual renewal of the policy. The policy was renewed in June, 1912. On the 20th of November in the same year Mr. and Mrs. Shoop separated about half-past eight in the morning, she going to the store or office on Market Space in the City of Baltimore, and he to the shipyard of which he was the tenant, at or near the foot of Stevenson Street. A little after 12 o'clock Mr. Shoop telephoned his wife. Not far from the same hour he was seen by a witness, Crispens, standing with another man at the engine room door in the shipyard. About an hour later as this witness. Crispens, passed the shipyard he saw a man lying underneath a boat which had been hauled up on the shipyard railway, and going over there found that the man so prostrate was Mr. Shoop, who was lying under the boat, dead.

Under this state of facts the plea which was filed by the defendant company to the suit brought on the policy, was as follows:

"This policy constituted the entire contract of insurance, except that if the insured sustains injury, fatally or otherwise, or contracts disease while exposed to the hazard of an occupation classed by the company as more hazardous than that stated in the schedule of warranties, except ordinary duties about residence or while engaged in recreation, the company will pay such proportion of the indemnities provided in the policy as the premium paid by the insured will purchase at the rate but within the limits fixed by the company for such more hazardous occupation.

"That said Frank J. Shoop was, at the time he sustained the injury set out in the declaration, exposed to the hazard of an occupation classed by the company as more hazardous than that stated in the schedule of warranties, to wit: That of machinist or ship-carpenter or shipwright; and that the proportion of the indemnities provided in said policy which the premium paid by the insured will purchase at the rate fixed by the company for such occupation of machinist or ship-carpenter or shipwright is six-elevenths; so that the plaintiff is entitled to recover in this action the sum of $1,500, and no more."

When the case was reached for trial and the jury had been sworn, the defendant moved the Court to grant to it the right to open and close the case, which motion the Court refused, and this ruling constitutes the ·first bill of exceptions. The theory of the defendant upon this motion is substantially this: That by its plea it admitted the *prima facie* right of the plaintiff to recover, and that it had tendered the only issue in the case and, therefore, had assumed the burden of proof; that having assumed the burden of proof, it followed as a matter of right that it was entitled to the opening and closing of the case, and that the denial of this right operated to the prejudice of the defendant and forms a sufficient ground for reversal. Many cases were cited to sustain this view, and in fact if

the cases as presented corresponded with the theory announced
by the defendant, the vast weight of authorities is in favor
of the position contended for.   In the Federal Courts, and
in some cases in the State Courts it has been held that the
conduct of the trial and the ruling of the trial Court upon
a matter of this nature is within the discretion of the Court,
and that from the exercise of such discretion no appeal will
lie.   In some States there are procedural rules which regu-
late the matter, but independent of those the general prin-
ciple is that stated in 15 *Ency. Plead. & Prac.* 183-4, and
adopted in this State in the case of *Baltimore City* v. *Hur-
lock,* 113 Md. 674, that "The test is that the right belongs
to the party against whom judgment would be rendered if
no evidence were introduced on either side."   Many other
cases might be cited which lay down the same rule, but a
careful examination of these cases shows the essential point
of difference between them and the case at bar.   This suit
was instituted by the plaintiff for the recovery of $2,500,
together with a 10% accumulation, making $2,750.   The
plea of the defendant did not concede the right of the plain-
tiff *prima facie* to recover such sum, but affirmatively set up
the defense appearing in the plea, limiting or seeking to
limit the right of recovery of the plaintiff to $1,500.   This
amounted to a denial of the plaintiff's claim to the extent
of $1,250, and, therefore, required the plaintiff to adduce
evidence in order to sustain her claim for the full amount.
The case is similar, therefore, to the case of *Cilley* v. *The
Preferred Accident Ins. Co.,* 187 N. Y. 517, in which the
answer to the suit on an accident insurance policy. set up the
defense that the death of the insured did not result wholly
from an accidental cause, but was in part the result of the
intoxication of the insured, and this was held to be in effect
a denial of a material allegation which the plaintiff was
required to prove in order to recover, and that the defend-
ant, therefore, was not entitled to open and close.   In all
such cases in determining who has the affirmative of an

issue, regard is had to the substance and effect of the issue,
rather than the form. *McLees* v. *Felt,* 11 Ind. 218. The
rule stated is one not infrequently applied in suits aris-
ing otherwise than on contracts of insurance. In *Grand
Rapids R. R. Co.* v. *Horn,* 41 Ind. 479, it was held, that
where the only question submitted to the jury was the
amount of the damages, that the right to open and close the
case was properly given to the party claiming the damages.
To the same effect is the case of *Filby* v. *Turner,* 9 Col. App.
202. No error, therefore, can be imputed to the trial Court
for the ruling upon this motion.

This second exception arose during the examination of
Edwin D. Loane, who was asked as to what the supervising
duties of an agent were, in the line of business pursued by
the insured. In the schedule of warranties constituting a
part of the policy the insured had defined his occupation in
his capacity of agent, as "having travelling and supervising
duties, not setting up or testing machinery." It is insisted
on behalf of the defendant that the word "supervise" or
"supervising" has a clear, distinct, definite meaning, and
therefore was not a subject upon which extraneous, parol
evidence was permissible. With this contention this Court
can not agree. A word may be shown to have a special
meaning in a certain trade or occupation. *Susquehanna
Fertz. Co.* v. *White,* 66 Md. 444. This was well illustrated
in the case of *Pinckney* v. *Dambmann,* 72 Md. 173, where
it was held that it was competent to show by parol in the case
of a sale of three "cargoes" of phosphate that a certain num-
ber of tons formed the average cargo in that trade. And the
following cases sufficiently show that the word "supervising"
is one which may require definition or elaboration. In
*Schmidt* v. *American Mutual Accident Assurance Co.,* 96
Wis. 304, it was held, that "supervising" means taking part in
the work, and that hence where an insured had stated that he
was a confectioner, and that his duties were supervising, the
insurance company would be liable on the policy, although

the policy classified him as a proprietor, not working, and his death was caused while working; and in the *National Accident Society of N. Y.* v. *Taylor,* 42 Ill. App. 97, the term "supervising farmer," was a subject matter of construction and the Court said, "We think that the supervision of a farm includes in its care and oversight the doing of such incidental things as may be required for keeping it in order, and does not mean absolute idleness so far as physical labor is concerned." The action of the trial Court upon this exception will, therefore, be sustained.

At the close of Mr. Loane's testimony the defendant moved to strike out the testimony or some portions of it, exactly how much is not entirely clear, upon the ground that the witness was not sufficiently qualified. We must agree with the learned judge who tried the case, that the motion was not well founded. The witness had been engaged for twenty-seven years, as agent, in the selling of gas engines, particularly for use in boats, during which time he had represented a number of different concerns and knew from his own experience what was required of an agent, and in a general way that all agents followed substantially the same course of action in the discharge of their duties. The evidence given by him was, therefore, admissible, for as was said in *Davis* v. *State,* 38 Md. 15, "Expert witnesses who from study or experience have acquired a peculiar knowledge in regard to the matter in dispute are permitted to testify not only as to the facts but also to give their opinion based upon facts within their own knowledge or upon facts proved by other witnesses. The weight of the evidence is a matter for the consideration of the jury." We find no error, therefore, in the ruling set out in the third bill of exceptions.

The fourth bill arises from the refusal of the Court to grant a special prayer offered by the defendant at the close of the plaintiff's case. That prayer was as follows: "The Court instructs the jury that the statement of duties of Frank J. Shoop contained in the schedule of warranties, that is

"having traveling and supervising duties, not setting up or
testing machinery," did not notify the defendant that he
would be exposed to the hazard and dangers incident to in-
specting the sides and bottoms of boats, while on marine rail-
ways, and the undisputed evidence in this case is that said
Frank J. Shoop met his death while exposed to the dangers
of an occupation as above described, and under the pleadings
in this case their verdict must be for the pro rata part of the
policy sued on, to wit, the sum of fifteen hundred dollars."
This prayer was properly refused. In the schedule of war-
ranties the insured had stated that he had supervising duties,
the defendant had assumed to know of what those duties
consisted; if it was in doubt or desired further or fuller
information with regard thereto, it could readily have ascer-
tained by inquiry, which there is no pretence that it ever
made, and it cannot now after loss take advantage of its own
inaction as a ground of defense.

The fifth exception deals with the ruling of the Court
upon the prayers, two having been granted at the instance of
the plaintiff, and of the nine offered by the defendant five
were granted and four refused.

The defendant's first prayer was to direct a verdict upon
the theory set out in the defendant's plea, and is not sup-
ported by the evidence, and was therefore, properly refused.

The defendant's second prayer, which is marked third,
denied the right of the plaintiff to recover interest, in case
the jury should render a verdict for the sum of $1,500 only.
Interest is ordinarily a matter which rests in the discretion
of the jury, but a plaintiff may debar himself from a right
to demand interest where a tender of an amount has been
made and refused, and the amount of the verdict, exclusive
of interest, does not exceed the amount tendered. There
was no tender in this case, and it was within the province
of the jury either to find for the plaintiff for the full amount
of the claim, or for the plaintiff only for the proportionate
amount of the sum named in the policy, and in either event

in the absence of tender the allowance of interest was a matter for the exercise of the discretion of the jury.

The defendant's fourth prayer was palpably wrong; it required the jury, as in a criminal case, to be satisfied "Beyond a reasonable doubt" of certain enumerated facts, whereas, in a proceeding of this character all that could be required was that the jury should be satisfied by a preponderance of the evidence.

The defendant's eighth prayer reads as follows: "The jury are instructed that it is not necessary for them to find that Shoop was actually working upon the boat at the time he met his death in order to justify a verdict for the proportionate amount of said policy; that if they find that he was inspecting said boat, its position or injuries at the time of his death, then their verdict must be for the proportionate amount of said policy," and was properly refused. It required the jury to find in effect that the inspection of the vessel must defeat the plaintiff's claim for the full amount of the policy, and this in the face of the evidence that the inspection was a usual and customary part of the supervision.

The seventh prayer of the defendant, which was granted, was more favorable to it than it was in strictness entitled to, as it left to the jury to find a condition of fact which there was no evidence contained in the record sufficient to support, but if that were eliminated, when taken in connection with the defendant's fifth and sixth prayers, and the first prayer of the plaintiff, the case was fairly presented to the jury, and no reversible error can be ascribed to the lower Court in its several rulings upon the prayers.

The judgment below will accordingly be affirmed in No. 60.

> *Nettie J. Shoop's Appeal in No. 48 dismissed. Judgment in No. 60 (The Fidelity Co.'s Appeal) affirmed; the Fidelity and Deposit Company of Maryland to pay the costs.*