**INGERSOLL–RAND FINANCIAL CORPORATION,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company.**

Civ. A. No. 82–5665.

United States District Court, E.D. Louisiana.

May 29, 1984.

---

WICKER, District Judge.

Plaintiff, Ingersoll-Rand Financial Corporation, brings suit against defendant, Employers Insurance of Wausau, claiming that it is entitled to recover under a hull insurance policy issued by the defendant covering the MV SUZIE. The MV SUZIE was lost on December 14, 1981. It was owned and operated by Mire Marine Services, Inc., not a party to this suit. This matter was submitted to the Court on a former date. After considering the record, the stipulations of the parties, the evidence adduced at trial, the briefs of counsel and the applicable law, the Court issues the following Findings of Fact and Conclusions of Law, to wit:

## FINDINGS OF FACT

1. Plaintiff, Ingersoll-Rand Financial Corporation (hereinafter Ingersoll-Rand) is the holder of a promissory note secured by a First Preferred Ship Mortgage executed by Mire Marine Service, Inc., the owner of the MV SUZIE. (Exhibits A and B)

2. At all times pertinent hereto, the SUZIE was covered by a hull insurance policy issued by the defendant, Employers Insurance of Wausau, which named plaintiff as an additional loss payee. (Exhibit F) Also in effect was a breach of warranty endorsement to the policy, admitting the seaworthiness of the vessel, whereby Employers agreed that the interest of the mortgagee, Ingersoll-Rand, was not to be impaired or invalidated by any negligence of the mortgagor, owner, master, agent or crew of the vessel. (Exhibit G)

3. On or about December 11, 1981, Owen Mire, President of Mire Marine, moored the vessel at its dock on the Intercoastal Waterway. On December 14, Mire discovered that the SUZIE was missing. Immediately thereafter, Mire contacted the bridge tender at the Louisa Street Bridge and the lockmaster at the Bayou Bouef locks. Both reported that their logs did not reflect that the vessel had effected passage through the locks or the bridge and the vessel has never been recovered to this date. (Deposition of Owen Mire)

4. It is undisputed that the premiums on the policy were timely paid and that demand for payment was properly made to the defendant.

5. After defendant refused to make payment on the policy, Ingersoll instituted this suit to recover the outstanding principal under the policy.

6. Defendant contends that the vessel was stolen and accordingly is not covered under the policy provisions. The great weight of the credible evidence reflects that the SUZIE was stolen. The vessel had been left unattended for two or three days, and the keys were easily obtainable and transferable by the various crew members and other employees of Mire Marine. Moreover, the Mire Marine dock was poorly lighted and in a remote and isolated area. (Deposition of Owen Mire) It is undisputed that the vessel could have been navigated into the Gulf of Mexico or the Atchafalya River without passing the Louisa Street Bridge or through the Bayou Bouef locks. Plaintiff's contention that the vessel was rammed by an oncoming tug or swept away by a current is based on mere speculation. There was no debris found at the Mire dock after the disappearance which would have indicated loss by collision, or heavy current. Furthermore, there was no evidence presented that the SUZIE was improperly moored, nor was any trace of the vessel ever discovered. (Deposition of Owen Mire)

7. However, the evidence reflects that Mire Marine, the owner of the MV SUZIE was negligent in failing to properly light its

dock, to properly guard the vessel and in failing to adequately monitor the keys to the vessel. In his deposition, Owen Mire, President of Mire Marine testified that a watchman should have been posted over the SUZIE, and that many employees of the company possessed keys to the vessel and that these keys were unmonitored by the Company and easily copied. Accordingly, the Court finds that the theft of the vessel would not have occurred but for the negligence of Mire Marine.

8. It is undisputed that the indebtedness of Mire Marine to plaintiff under the aforementioned note as of time of the loss is $45,480.38.

## CONCLUSIONS OF LAW

1. This is an admiralty and maritime claim within the meaning of Rule 9(h). 28 U.S.C. § 1333; *Insurance Co. v. Dunham*, 78 U.S. (11 Wall) 1, 20 L.Ed. 90 (1870).

2. The first legal issue to be decided is what law should be applied in interpreting the relevant portions of the policy in question. In *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the Supreme Court held that in the absence of applicable federal statutes or judicially established federal admiralty law, the district court should look to the law of the appropriate state for guidance. Since none of the cases cited by the parties in their briefs, nor any other cases discovered by this Court reveal that this matter has been addressed by federal authorities, the Court must turn to state law. *See Walter v. Marine Office of America*, 537 F.2d 89 (5th Cir. 1976); *Travelers Indem. v. Certain Underwriters at Lloyds*, 566 F.Supp. 267 (E.D.La.1983). Louisiana law would undoubtably be the appropriate state law to apply, since the loss of the vessel occurred in Louisiana, the owner of the vessel is a Louisiana resident and the parties are corporations doing business in Louisiana. *Walter v. Marine Office of America, supra*, at 94; *Travelers Indem. v. Certain Underwriters at Lloyds, supra*, at 269. Unfortunately, Louisiana jurisprudence on the precise issues involved in this case is not well-defined and thus this Court must extrapolate a rule from available case law and from the decisions of other jurisdictions.

3. Plaintiff contends, *inter alia*, that it is afforded coverage for the loss of the SUZIE under Endorsement 14–A of the policy. Endorsement 14–A provides, in pertinent part, that

[I]n consideration of an additional premium ... seaworthiness of the vessel(s) insured by this Policy as between this Company and [plaintiff] hereinafter [called] the mortgagee...is hereby admitted, and the interest of the mortgagee shall not be impaired or invalidated by any act of or omission or neglect of the mortgagor, owner, master, agent, crew of the vessel(s) insured by this Policy or by any failure to comply with any warranty or condition over which the mortgagee has no control or over which the mortgagee could, but has not exercised such control or by any change in the title, ownership, or management of such vessel(s); the interest of the mortgagee being that interest more particularly set forth in the mortgage on such vessel(s) in favor of the mortgagee and the note attached thereto, said mortgage and [note] being assignable to this Company upon demand provided full payment of the interest...of the mortgagee has first been paid. This coverage includes, but [is] not limited to Inchmaree protection.... In the event of cancellation or modification of this Policy this Company shall give 30 days written notice of such cancellation or modification to the mortgagee prior to the effective date thereof. All other terms and conditions and valuations remaining unchanged.

(Exhibit G)

■ 4. Under Louisiana law, Endorsement 14–A is a standard mortgage clause. *May v. Market Ins. Co.*, 387 So.2d 1081 (La.1980). Notwithstanding the fact that it is merely a rider on the insurance policy between the mortgagor and the insurance company, a standard mortgage clause creates a separate and independent contract

between the insurer and the mortgagee, as if the mortgagee had procured a separate policy naming himself as the insured. *May v. Market Ins. Co., supra,* at 1084.

■ 5. Defendant argues that a standard mortgage clause merely precludes an insurer from denying to the mortgagee coverage under the "main" policy if a condition of the policy is breached by the mortgagor, but that it does not create additional coverage. Therefore, it is argued that because Mire Marine, the mortgagor, could not recover under the policy,[1] coverage by plaintiff is also precluded. The Court rejects this contention. Although some jurisdictions have adopted such a restrictive interpretation, *see e.g., Avemco Ins. Co. v. Jefferson Bank & Trust Co.,* 613 S.W.2d 436 (Mo.App.1980); *General Motors Acceptance Corp. v. Western Fire Ins. Co.,* 457 S.W.2d 234 (Mo.App.1970), the better rule, and the one most likely to be adopted by the Louisiana Courts, is that a standard mortgage clause broadens the scope of coverage afforded the mortgagor in the underlying policy. This is the majority view. *White Motor Corp. v. Northland Insurance Co.,* 315 F.Supp. 689 (S.D.1970); *American National Bank & Trust Co. v. Young,* 329 N.W.2d 805 (Mn.1983); *Southwestern Funding Corp. v. Motors Ins. Corp.,* 59 Cal.2d 91, 378 P.2d 361, 28 Cal. Rptr. 161 (Cal.1963). *Piedmont Fire Ins. Co. v. Fidelity Mortgage Co.,* 250 Ala. 609, 35 So.2d 352 (1948); *Don Chapman Motor Sales, Inc. v. National Savings Ins. Co.,* 626 S.W.2d 592 (Tex.App.1982); *Underwriters at Lloyds v. American Aviation Ground Services, Inc.,* 421 So.2d 12 (Fla. App.1982); *Security Ins. Co. of Hartford v. Commercial Credit Equip. Corp.,* 399 So.2d 31 (Fla.App.) *pet. for rev. denied,* 411 So.2d 384 (1981); *Airvac, Inc. v. Ranger Ins. Co.,* 266 So.2d 178, 180 (Fla.App.1972); *National Cas. Co. v. GMAC,* 161 So.2d 848 (Fla.App.1964); *Reed v. Firemans Ins. Co.,* 80 A. 462 (N.J.App.1911).

6. While all clauses of an insurance contract should be construed together, and the provisions of a mortgage clause must be read together and harmonized with the balance of the policy when reasonably possible, the mortgage clause must prevail in the case of an irreconcilable conflict between it and other provisions of the policy. That is, insofar as the provisions of the policy are inconsistent with and antagonistic to the clause protecting the interest of the mortgagee, they must be regarded as inapplicable in determining his rights.

*American National Bank & Trust Co. v. Young, supra,* at 812 (quoting 11 G. Couch, *Couch on Insurance* § 42:686 at 345 (1963 and Supp. 1976)); *Security Ins. Co. v. Commercial Credit Equip. Co., supra,* at 34.

7. A contract of insurance, like any other agreement, is the law between the parties, and every stipulation therein must be construed as written. The rules established for the interpretation of written instruments in general apply in the construction of insurance policies.

*Cambre v. Travelers Indem. Co.,* 404 So.2d 511, 513 (La.App. 4th Cir. 1981) (*quoting Harmon v. Lumberman's Mutual Cas. Co.,* 247 La 263, 170 So.2d 646, 651 (La. 1965)).

■ 8. By its plain terms, Endorsement 14–A insures the interest of the mortgagee against "*any* act of omission or neglect of the mortgagor." (Emphasis supplied) Since the negligence of the mortgagor was the proximate cause of the loss of the vessel by theft, and since it is not contended that the plaintiff was in any way negligent or had any control over the activities of Mire Marine with regard to the safekeeping of the SUZIE, plaintiff is entitled to recover under the policy.

9. In any event, if the meaning of Endorsement 14–A is unclear, under Louisi-

---

**1.** We agree with the defendant's contention that no coverage for the theft of the vessel is afforded in the underlying policy, including the In-

chmaree clause. *See Cambre v. Travelers Indemnity Co.,* 404 So.2d 511 (La.App. 4th Cir. 1981) and the cases cited therein.

ana law, it must be construed "against the insurer who wrote it and should be read liberally so as to indemnify the insured." *Walter v. Marine Office of America*, 537 F.2d at 95.

10. Let judgment be entered in favor of plaintiff, Ingersoll-Rand Financial Corporation and against defendant, Employers Insurance of Wausau in the sum of $45,480.38, plus interest from the date of loss and all costs of this proceeding.