James Lee CLEMONS, Sr., et ux.

v.

AMERICAN CASUALTY COMPANY.

Civ. No. JFM–93–35.

United States District Court,
D. Maryland.

Dec. 8, 1993.

Clemons (hereinafter "plaintiff") under a homeowners insurance policy it had issued after concluding that plaintiff had made material misrepresentations when he applied for the policy.[1]

On November 27, 1992, plaintiff instituted this action in the Circuit Court for Baltimore City, alleging that defendant had breached its insurance contract by denying his claim. Defendant subsequently removed the action to this court. James Eurice (hereinafter "intervenor"), the mortgagee of the insured property, moved to intervene on February 3, 1993, and this motion was granted on March 23. Intervenor claims that, as the mortgagee, he is entitled to the insurance proceeds. Intervenor and defendant have each filed motions for summary judgment, both against one another and against plaintiff. Defendant's motions will be granted. Intervenor's motion with respect to plaintiff will be granted. His motion with respect to defendant will be denied.

## I.

In August of 1990, intervenor sold a piece of improved property, known as 180 Waldo Drive in Pasadena, Maryland, to Wayne Brumwell. To finance the sale, intervenor loaned Brumwell $135,000 secured by a mortgage on the property. The Deed of Trust between intervenor and Brumwell required Brumwell to acquire "Hazard Insurance" for the property. Brumwell purchased the necessary insurance.

Shortly thereafter, Brumwell's financial difficulties led him to ask his brother-in-law, plaintiff, to take over payment on the property. Although plaintiff initially sought to have the property deeded to him in full, intervenor insisted that Brumwell remain liable for the mortgage payments. Thus, in December of 1990, plaintiff and Brumwell entered into a land installment contract under which Brumwell would transfer title to plaintiff when payments to intervenor had been completed. For the first several months plaintiff made payments to Brumwell, but upon learning that the money was not being promptly for-

William C. Littleton, Sr., Littleton and Wald, Glen Burnie, MD, for plaintiff.

V. Timothy Bambrick, George E. Reede, Jr., Baltimore, MD, for defendant.

Clarence M. Thomas, Timonium, MD, for intervenor.

## MEMORANDUM

MOTZ, District Judge.

This case arises out of a dispute over a fire insurance claim. On May 20th, 1992, American Casualty Company (hereinafter "defendant") denied a claim made by James Lee

---

1. Defendant also concluded that plaintiff had intentionally caused the fire that destroyed the insured property. The validity of that claim is not raised by the pending motions.

warded to intervenor, plaintiff began making payments directly to him.

In December of 1990, when plaintiff entered into the installment contract and moved onto the property, he also took over Brumwell's insurance obligations, buying a dwelling fire policy from the Continental Casualty Company. In October of 1991, plaintiff, wishing to have his personal property covered, switched to a homeowners policy with defendant. At this point there is some dispute about the facts. Plaintiff claims that he told the insurance agent that both Brumwell and intervenor were lienholders. Int. Ex. 7 at 9–10. Defendant denies that plaintiff mentioned intervenor at all. In any event, the agent listed Brumwell on the application as a mortgagee. Intervenor was not listed anywhere on either policy. On December 7, 1991, the premises at 180 Waldo Drive were destroyed by fire, and this litigation ensued.

## II.

The threshold issue posed by the cross-motions for summary judgment that intervenor and defendant have filed against one another is whether intervenor may recover under the plaintiff's insurance contract directly as plaintiff's mortgagee. That contract contains a clause that reads: "If a mortgagee is named in this policy, any loss payable ... will be paid to the mortgagee and to you, as interests appear.... If we deny your claim, that denial will not apply to a valid claim of the mortgagee...." Def. Ex. B at tab 2.

■ The purpose of this type of clause, known to the initiated as a "standard", "union" or "New York" mortgage clause, is to insulate the mortgagee from acts of the mortgagor that would invalidate the policy. 5A Appleman, Insurance Law and Practice § 3401; 10A Couch on Insurance 2d § 42:716. It does this by creating a separate contractual relationship between the insurer and the mortgagee. *United States v. Commercial Union Insurance Cos,* 821 F.2d 164, 166 (2d Cir.1987) (New York law); *Ingersoll–Rand Financial Corp. v. Employers Insurance of Wausau,* 637 F.Supp. 642, 644–45 (E.D.La.1984) (Louisiana law); *Leigh v.*

*Western Fire Insurance Co.,* 575 F.Supp. 1192 (E.D.Mo.1983) (Missouri law); *see also,* 5A Appleman § 3401 ("... under a union or standard mortgage clause, it [is] considered that ... the insurer has entered into a separate contract with the mortgagee just as if the later had applied for the insurance entirely independently of the mortgagor.") This separate contractual relationship protects the mortgagee from defenses that the insurer can raise against the insured. *Rent–A–Car Co. v. Globe & Rutgers Fire Insurance Co.,* 158 Md. 169, 179–80, 148 A. 252 (1930). Thus, if this clause applies, defendant's subsequent argument that plaintiff made material misrepresentations by listing Brumwell as a mortgagee and failing to mention intervenor at all is moot as to intervenor.

■ Resolution of the issue turns upon the interpretation of the first phrase of the mortgage clause: "If a mortgagee is named in this policy...." The parties have not cited any cases directly on point. Of course, if the mortgagee is mentioned by name, the clause applies and the named mortgagee can recover regardless of the insured's actions. *Green v. Juneja,* 337 Pa.Super. 460, 487 A.2d 36 (1985); *Allstate Insurance Co. v. Howard Savings Institution,* 127 N.J.Super. 479, 317 A.2d 770 (1974); *Aetna State Bank v. Maryland Casualty Co.,* 345 F.Supp. 903 (N.D.Ill. 1972) (Illinois law). On the other hand, if no mortgagee is named, courts refuse to read in the name of the actual mortgagee, holding instead that the mortgagee holds nothing more than an equitable lien on the insurance proceeds, thus subjecting him to the same defenses as the insured. *Del–Remy Corp. v. Lafayette Insurance Co.,* 616 So.2d 231 (La. Ct.App.1993), *Hatley v. Payne,* 25 Ark.App. 8, 751 S.W.2d 20 (1988), *Nationwide Mutual Fire Insurance Co. v. Dungan,* 818 F.2d 1239 (5th Cir.1987) (Mississippi law); *Cottrell v. Clark,* 126 Mich.App. 276, 337 N.W.2d 58 (1983). This case falls between these two extremes. The mortgagee was neither named nor left unnamed; instead he was misnamed.

Intervenor argues that the language "if a mortgagee...." (intervenor's emphasis) should be read to mean that if any person is

listed as a mortgagee, even erroneously, then the actual mortgagee should be paid because the insurer was on notice that there was an additional interest to be protected. The burden is on the insurer, intervenor argues, to inform the public if the policy was intended only to cover the named mortgagee.[2] Defendant argues that the independent contractual relationship created by a standard mortgage clause cannot exist when the proper mortgagee is not named in the policy.

■ Plaintiff's argument is premised on the principle, well established under Maryland law, that an ambiguity in an insurance contract should be resolved against the party that drafted the policy. *Collier v. MD–Individual Practice Ass'n.*, 327 Md. 1, 607 A.2d 537 (1992). However, courts are not to construe the policy against the insurer until after they have determined from the face of the entire policy and from extrinsic factors what the intent of the parties was. *Id.; see also, W.M. Schlosser Co. v. Insurance Company of North America*, 325 Md. 301, 600 A.2d 836 (1992). Intervenor is asking this court to read the mortgage clause as if it were an open clause, designed to benefit a party not named in the policy. In construing similar open clauses, courts in other jurisdictions have held that in order to be held liable, the insurer must be shown to have intended to insure the class of unnamed people. *Grain Processing Corp. v. Continental Insurance Co.*, 726 F.2d 403, 404 (8th Cir.1984), ("[A]lthough the policy provides for the possibility of extending coverage to other than the insured, i.e. '1. For account of whom it may concern.', the policy holder ... must intend the unnamed party to be covered."); *McKenzie v. New Jersey Transit Rail Operation, Inc.*, 772 F.Supp. 146, 149 (S.D.N.Y. 1990) ("the intention to provide coverage for the benefit of a party not named in an insurance policy 'must appear from the four corners of the instrument.' ", quoting *Stainless,*

*Inc. v. Employers Fire Insurance Co.*, 49 N.Y.2d 924, 428 N.Y.S.2d 675, 406 N.E.2d 490 (1980)).

■ Here, intervenor has offered no evidence, either within the policy or extrinsic to it, demonstrating that defendant intended to insure him or the open class of any presently unnamed mortgagees who might be identified later. All that he points to is a statement by defendant's underwriter that it "was in the company's interest" to discover who the mortgagee of the property was. Int. Ex. 19 at 84, line 1. While this may well be true, it is not the same as establishing defendant's intent to insure a particular mortgagee or an unnamed mortgagee, whomever that turned out to be. Since intervenor bears the burden of proof on the issue, the absence of probative evidence supporting his contention is fatal to his cause. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III.

■ Intervenor argues that even if he is not entitled to the insurance proceeds under the mortgage clause as written, the court should use its equitable powers to reform the insurance contract in order to name him as the mortgagee.

A court may reform a contract when "there is a mutual mistake of fact, or a mistake made by one of the parties accompanied by fraud, duress or other inequitable conduct practiced on the person making the mistake by another party." *Flester v. Ohio Casualty Insurance Co.*, 269 Md. 544, 555–557, 307 A.2d 663, 670 (1973). Before the contract is reformed, however, " 'it must be *conclusively* established that both parties understood the contract as it is alleged it ought

---

**2.** Intervenor further argues that his reading of the mortgage clause is supported by language in the "Loss Payment" clause that states "We will pay you unless some other person is named in the policy or is legally entitled to receive payment." Intervenor believes that the language "legally entitled to receive payment" indicates that defendant anticipated that occasions would arise when someone not named in the policy

would be entitled to payment. It is apparent, however, that this clause is designed to insure payment to the beneficiary's heirs or assigns. The Loss Payment clause is separate from the mortgage clause and there is no indication in the policy that the former is meant to apply to the latter. Furthermore, the mortgagee is only "legally entitled to receive payment" if he is listed in the mortgage clause.

to have been expressed, and in fact it was, but for the mistake alleged in reducing it to writing.' " *Id.* (emphasis in original) quoting *American Automobile Insurance Co. v. Shapiro,* 151 Md. 383, 387, 135 A. 163 (1926). In other words, there must have been some meeting of the minds, some underlying agreement, otherwise the court would be writing a new contract, not reforming an old one.

The cases cited by plaintiff all illustrate this principle. In *Ben Franklin Insurance Co. v. Gillett,* 54 Md. 212 (1980), the insured had been mistakenly listed as owner not lessor; in *Maryland Home Fire Insurance Co. v. Kimmell,* 89 Md. 437, 43 A. 764 (1899), a husband and wife mistakenly had been listed as owners when only wife actually held title to property; in *Mutual Life Insurance Co. v. Metzger,* 167 Md. 27, 172 A. 610 (1934), a fifty dollar insurance premium had mistakenly been recorded as $500; and in *Hoffman v. Chapman,* 182 Md. 208, 34 A.2d 438 (1943), the deed description mistakenly left out the amount of land specified in sale contract.[3] The contracts were reformed in each of these cases. However, the cases are of no avail to intervenor here since there is no evidence that defendant (or, for that matter, plaintiff) intended to provide intervenor with insurance coverage.

## IV.

Since intervenor cannot recover under the mortgage clause and since the equitable remedy of reformation is not available, the next issue is whether intervenor has an equitable lien on any insurance proceeds that are due and payable. Although there is no Maryland authority directly on point, cases from other jurisdictions hold that mortgagees who are not entitled to receive insurance proceeds directly under a policy may still claim these proceeds under an equitable lien theory. *Hatley v. Payne,* 751 S.W.2d 20, 22 (Ark.App.1988), *Nationwide Mutual Fire Insurance Co. v. Dungan,* 818 F.2d 1239, 1245 (5th Cir.1987) (Mississippi law); *Cottrell v. Clark,* 126 Mich.App. 276, 337 N.W.2d 58, 61 (1983). These cases have held that the lien arises out of the covenant that the insured made with the mortgagee to procure insurance: "Where an insurance policy is procured by a mortgagor under an agreement to insure for the mortgagee's benefit, the proceeds *recovered* by the mortgagor are held in trust for the mortgagee. The mortgagee has an equitable lien on the proceeds of the insurance for the satisfaction of the mortgage, regardless of whether the policy is made payable to him." *Hatley,* 751 S.W.2d at 22 (emphasis in original).

In Maryland, equitable liens arise most frequently when a party attempts to create a mortgage but is unsuccessful due to some defect in the instrument. *Equitable Trust Co. v. Imbesi,* 287 Md. 249, 412 A.2d 96 (1980); *Angeles Real Estate Co. v. Kerxton,* 737 F.2d 416 (4th Cir.1984). Courts find that if the parties intended to create a lien, then the lien exists even if the instrument is somehow flawed or even non-existent. *Imbesi,* 287 Md. at 255–56, 412 A.2d at 98–99; *Kerxton,* 737 F.2d at 420. These rulings harmonize nicely with the precedents from other jurisdictions that find an equitable lien for the benefit of the mortgagee when he is not listed in the mortgage clause. In either case, as long as it was the intent of the parties that one party benefit, either by obtaining insurance proceeds or by obtaining a mortgage, then a defect in the instrument meant to effect this intent should not prevent the party from benefiting.

Here, it is undisputed that Brumwell agreed to insure the property when he purchased it from intervenor. Int. Ex. 2. Similarly, there is uncontradicted evidence that when plaintiff began to make mortgage payments in place of Brumwell, he also took over responsibility for insuring the property. Int. Ex. 6 at 12. Def. Ex. J at 8. Accordingly,

---

3. Intervenor also relies on *Baltimore v. De Luca–Davis Construction Co. Inc.,* 210 Md. 518, 124 A.2d 557 (1956). His reliance is misplaced. The four elements that intervenor claims will allow reformation in an instance of unilateral mistake are, in fact, elements that the court uses to determine if rescission, not reformation, is an appropriate remedy. *Id.* at 527, 124 A.2d 557. In *De Luca–Davis,* the court, finding a unilateral mistake of "unconscionable proportions", rescinded the contract. *Id.* at 535, 124 A.2d 557. It refused, however, to reform the contract. *Id.* at 524, 124 A.2d 557.

the covenant to insure required by the courts in *Hatley, Dungan,* and *Cottrell* exists, and this covenant evidences the intent required by Maryland courts to create an equitable lien in favor of intervenor on any insurance proceeds that are payable to plaintiff by defendant.

## V.

Since intervenor has nothing more than an equitable lien on plaintiff's insurance proceeds, he is subject to any defenses defendant has against plaintiff. I am thus brought to the fundamental question of whether plaintiff made any material misrepresentations to defendant that void coverage under the policy. Plaintiff and intervenor assert that no misrepresentations, at least no material misrepresentations, were made. Intervenor further argues that even if such misrepresentations were made, defendant is estopped from asserting them as a defense because defendant was negligent in failing to investigate the information which plaintiff did provide.

## A.

■ The policy issued by defendant to plaintiff provides in relevant part: "The entire policy will be void if, whether before or after a loss, the insured has: ... c. Made false statements; relating to this insurance." Def. Ex. B at tab 3. The parties do not dispute how the court should interpret this language. All three agree that the court must apply a two pronged test, first determining if there was an actual misrepresentation and then inquiring whether this misrepresentation was material. *Erie Insurance Co. v. Insurance Commissioner of State,* 84 Md.App. 317, 321, 579 A.2d 771, 773 (1990); *Fitzgerald v. Franklin Life Insurance Co.,* 465 F.Supp. 527, 534–35 (D.Md.1979), *aff'd,* 634 F.2d 622 (4th Cir.1980). Defendant asserts and intervenor admits that the misrepresentation need not be intentional: "[T]he

insurer may void the policy regardless of whether the material misrepresentation is made intentionally, or through mistake and in good faith." *Fitzgerald,* 465 F.Supp. at 534.[4]

■ The existence of a misrepresentation, at least by omission, is clear. The insurance policy lists Brumwell as the mortgagee. Intervenor's name is not mentioned anywhere on the form. Def. Ex. Q. Plaintiff does allege that when he applied for the policy, he told the insurance agent that Brumwell and intervenor were both lienholders. However, he does not contend that he told the agent that intervenor was the actual mortgagee or that Brumwell was the seller under a land installment contract. The question thus becomes whether these omissions were material.

The parties agree on the standard by which materiality should be judged. Intervenor and defendant each makes the analogy to the Maryland statute concerning false statements made in an application for life or health insurance: "... misrepresentations ... shall not prevent a recovery under [a] policy or contract unless ... (3) the insurer in good faith would either not have issued, reinstated, or renewed the policy or contract ... if the true facts had been known to the insurer as required either by the application for the policy or otherwise." Md. Code Ann., Art. 48A, § 374 (1957). *See also, Metropolitan Life Insurance Co. v. Samis,* 172 Md. 517, 528, 192 A. 335 (1937) ("... whether ... facts of which the insured had full knowledge were concealed from the insurer, knowingly or inadvertently, and were of such probative force as in all reasonable probability, if brought to the knowledge of the company, would have precluded the issuance of the policy."). Thus, I must examine the record to determine if there is any genuine dispute as to how defendant would have acted if the true facts had been known to it. If it would

---

4. Plaintiff argues that some type of intent to deceive is required if an insurance contract is to be voided due to misrepresentation. He offers no case law to support this assertion. As I note below, the Maryland statute concerning false statements in life or health insurance contracts does not require an intent to deceive. Additionally, the insurance contract between defendant and plaintiff provides that "[t]he entire policy will be void if, whether before or after a loss, an insured has.... made false statements...." (Def.Ex B at tab 3). Again, no malicious intent is required.

have acted differently, then the misrepresentations are material.

Defendant argues that if it had known the true information—that intervenor was the actual mortgagee and that Brumwell owned the property—it would not have issued the policy. During her deposition, defendant's underwriter (Vicki Clipp) testified that if intervenor had been identified, she would have inquired into the relationship between him and plaintiff, as was standard operating procedure. Int. Ex. 19 at 84, line 19 through 85, line 12; *see also* Def. Ex. T. Having made this inquiry, defendant asserts, Clipp would have discovered Brumwell's actual interest in the property as seller to plaintiff under the installment contract. Clipp further indicated during her deposition that because of the unusual nature of land contracts as opposed to mortgages, she would have ordered a credit report on Brumwell if she had known the actual relationship between him and plaintiff. Def. Ex. S at 44, lines 9–17; Def. Ex. S at 110, line 18 through 111, line 9. This credit report would have revealed a federal tax lien of over $100,000 on all of Brumwell's properties. In an affidavit submitted after her deposition had been taken, Clipp stated that "[h]ad I learned through a credit report on Brumwell that his properties were subject to a federal tax lien in excess of $100,000, under no circumstances would American Casualty have issued a homeowner's policy to plaintiff, regardless of whether Brumwell or Eurice were listed a [sic] mortgagees or as insureds." Def. Ex. W.[5]

Intervenor seeks to create a genuine dispute of fact on these points by citing another portion of Clipp's deposition where she allegedly contradicted the testimony upon which defendant now relies. That testimony occurred during the course of the following exchange between Clarence M. Thomas, counsel for the intervenor, and Clipp:

Q. We operate with the same understanding that Mr. Clemons is the insured.

A. Okay.

Q. Is the applicant for insurance.

A. All right.

Q. The only change from the facts as we know them to have occurred is that

MR. REEDE: At the time she underwrote it or today?

MR. THOMAS: At the time that she underwrote it.

Q. With the only fact—

A. At the time I underwrote it, it didn't matter whose name appeared at the bottom. I would have performed the same function. Aside from this case as we now know it, I would have performed the same underwriting function. Whenever an individual is listed as a mortgagee, it is standard practice to order credit reports on the insured and to ask what is the relationship between these two individuals, so that you can understand what your risk characteristics are.

Q. Now, let me go back to the original question and that is that having done all of that, if the name was James Eurice and not Wayne Brumwell and the answers had been exactly the same, exactly the same, without one single thing being changed, other than the name of James Eurice instead of Wayne Brumwell, would the policy have been issued?

A. Yes, I would have issued the policy.

Int. Ex. 19 at 93–94.

This testimony does not impeach what Clipp testified to elsewhere in her deposition and affidavit. A fair reading of what she was saying is simply that the particular identity of a mortgagee is not material: all that is important is that he or she is a mortgagee. Moreover, intervenor's counsel never asked Clipp the most critical question: whether defendant would have issued the policy if Brumwell's interest in the property had been properly identified. On this record a fair-minded jury could not return a verdict in favor of intervenor (or plaintiff) on the ground that Clipp's testimony had been impeached. Accordingly, defendant is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). *See also*

---

5. Defendant's underwriting guidelines provide that sellers under an installment contract must be insured as "additional insureds," not as mortgagees. Def.Ex. X, paragraph 3.a.(2).

*National Life and Accident Insurance Co. v. Gordon,* 45 Md.App. 139, 140, 411 A.2d 1087, 1088 (1980) ("Only 'when the evidence is clear and convincing, or uncontradicted,' may a trial judge rule as a matter of law that misrepresentation is false and material", quoting *Peoples Life Insurance Co. v. Jerrell,* 271 Md. 536, 538, 318 A.2d 519, 520 (1974)).

## B.

█ Intervenor further contends that defendant is estopped from asserting the material misrepresentation defense because of its own alleged negligence in failing to investigate and verify the information plaintiff gave when applying for the insurance policy. This argument is without merit. Maryland law imposes a heavy burden on applicants to provide correct information on their application. *Sun Insurance Office Ltd. v. Mallick,* 160 Md. 71, 153 A. 35 (1931); *Fitzgerald v. Franklin Life Insurance Co.,* 465 F.Supp. 527, 535 (D.Md.1979), *aff'd,* 634 F.2d 622 (4th Cir.1980). The duty to investigate that intervenor wishes to impose on defendant only exists in extraordinary situations when the insurer is on notice that some type of investigation is necessary. In the cases intervenor cites, the insurer had notice because it had actual knowledge of a considerable amount of suspicious information. *See Progressive Casualty Insurance Co. v. Ehrhardt,* 69 Md. App. 431, 518 A.2d 151 (1986) (insurer had actual knowledge of the date of the car crash when it received the back dated claim); *Med-*

*ical Mutual Liability Insurance Soc. v. Miller,* 52 Md.App. 602, 451 A.2d 930 (1982) (insurer had actual knowledge that one consent form was signed while patient was under sedation and that on another her signature was forged by the doctor); *Shoop v. Fidelity & Deposit Co.,* 124 Md. 130, 91 A. 753 (1914) (insured's statement that he had "supervising duties" at a shipyard gave insurer notice that he might engage in dangerous activities).[6] Here, the false information that plaintiff provided could not have possibly put defendant on notice that additional investigation was necessary. In fact, the information identifying Brumwell as the mortgagee was not in the least bit suspicious but rather suggested that issuing the policy on 128 Waldo Drive was a routine matter requiring no further investigation.[7]

## VI.

█ The final issue that needs to be decided is whether intervenor is entitled to a judgment against plaintiff for the balance of the mortgage payments. This question may be answered easily. Plaintiff does not deny that he agreed to assume the obligation of procuring insurance that protected intervenor's interest when plaintiff purchased the property from Brumwell. Because he failed to perform this promise, he is liable for the consequential damages that flowed from his default, specifically the unpaid balance of the mortgage payment. Accordingly, intervenor's motion for summary judgment against plaintiff will be granted.[8]

---

**6.** The three other cases that intervenor cites in making his argument are inapposite. In *Rubinstein v. Jefferson National Life Insurance Co.,* 268 Md. 388, 302 A.2d 49 (1973), the court held that the insurer was not estopped from denying a claim because it had recently attempted to collect a premium payment. Similarly, in *Fidelity & Casualty Co. v. McConnaughy,* 228 Md. 1, 179 A.2d 117 (1962), the court held that the insurer was not estopped from denying a claim simply because it took it eight days to verify that the insured had violated the policy's cooperation clause. Finally, *Metropolitan Life Insurance Co. v. Samis,* 172 Md. 517, 192 A. 335 (1937), is a case concerning materiality. The court says nothing about estoppel.

**7.** Plaintiff makes an additional estoppel argument, contending that defendant is prohibited from voiding the policy because it had knowl-

edge, as early as January of 1991, that intervenor was the actual owner of the property. Plaintiff cites nothing in the record to support this argument, and it is entirely without evidentiary basis.

**8.** Because I find that plaintiff's failure to procure proper insurance renders him liable to intervenor for the balance of the unpaid mortgage payments, I need not consider intervenor's alternative argument that plaintiff impliedly assumed the mortgage as the result of his dealings with Brumwell and intervenor. I note, however, that in light of the fact that plaintiff began paying the mortgage payments directly to intervenor rather than paying them through Brumwell appears sufficient to constitute an implied assumption of the mortgage. *See, e.g., Brice v. Griffin* 269 Md. 558, 307 A.2d 660 (1973); *see also Daugharthy v. Monritt Associates,* 293 Md. 399, 444 A.2d 1030 (1982).

A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herein, it is, this 8th day of December 1993

ORDERED

1. The motion of James Eurice for summary judgment against American Casualty Company is denied;

2. American Casualty Company's motion for summary judgment against James Lee Clemons, Sr. and James Eurice is granted;

3. Judgment is entered in favor of American Casualty Company against James Lee Clemons, Sr.;

4. Judgment is entered in favor of American Casualty Company against James Eurice;

5. James Eurice's motion for summary judgment against James Lee Clemons, Sr. is granted; and

6. It is declared that James Lee Clemons, Sr., is liable to James Eurice for the balance of the unpaid principal and interest due under the mortgage on the 180 Waldo Drive property.